**UNION COUNTY SCHOOL CORPORATION BOARD OF SCHOOL TRUSTEES and Joint Union School Board of Education, Appellants (Petitioners Below),**

v.

**INDIANA EDUCATION EMPLOYMENT RELATIONS BOARD and Donald L. Brown, in his Individual Capacity and as President of the National Education Association—Union County Teachers Association, Appellees (Defendants Below).**

No. 4-683A187.

Court of Appeals of Indiana,
Fourth District.

Dec. 18, 1984.

Rehearing Denied Feb. 7, 1985.

Charles R. Rubright, Ronald M. Soskin, Bose, McKinney & Evans, Indianapolis, Ronald L. Jordan, Williams & Jordan, Liberty, for appellants.

Wayne O. Adams, III, Joseph H. Hogsett, Bingham, Summers, Welsh & Spilman, Indianapolis, Michael A. Douglass, O'Connor, Smith & Douglass, Brookville, for appellees.

MILLER, Presiding Judge.

This action was commenced by the Joint Union School Board of Education and the Union County School Corporation Board of School Trustees (Employers) to judicially review, pursuant to IND.CODE 4–22–1–1 *et seq.*, the decision and order of the Indiana Education Employment Relations Board (IEERB) in an unfair practice proceeding. The IEERB concluded that the Employers had committed an unfair practice against its teachers in violation of the Certificated Educational Employee Bargaining Act, IND.CODE 20–7.5–1–1 *et seq.* (Bargaining Act). The IEERB based its determination upon its findings that (1) it had jurisdiction over both Employers, (2) the Employers had unilaterally scheduled make-up days for the 1977–78 school year without bargaining or discussing this schedule with the teachers' exclusive representative (here represented by Donald L. Brown, President of the National Education Association, Union County Teachers Association), and (3) the Employers unilaterally adopted and implemented a school closing policy for the 1978–79 school year without bargaining or discussing this policy with the teachers' exclusive representative. In its order, the IEERB directed the Employers to cease and desist from refusing to bargain wages, to cease and desist from refusing to discuss with the teachers' exclusive representative changes in the school calendar, and to provide supplemental pay to the teachers affected by the make-up days.

The Employers filed a verified petition for judicial review of the decision on March 8, 1982. The trial court affirmed the decision and order of the IEERB in all respects. We affirm in part, reverse in part and remand.

## ISSUES

In this appeal the Employers present the following issues for review:

1. Did the trial court err in concluding that the IEERB had jurisdiction over the Joint Union School Board of Education, and the Union County School Corporation Board of Trustees, pursuant to the Certificated Educational Employee Bargaining Act. I.C. 20–7.5–1–1 *et seq?*

2. Did the trial court err in affirming the IEERB's decision that the Employers committed an unfair practice by failing to *bargain* the issues of make-up school days for teachers and the adoption of a policy concerning school closings in violation of IND. CODE 20–7.5–1–4?

3. Did the trial court err in affirming the IEERB's decision that the Employers committed an unfair practice by failing to *discuss* the issues of make-up school days for teachers and the adoption of a policy concerning school closings in violation of IND. CODE 20–7.5–1–5?

4. Did the trial court err in affirming the IEERB's award of monetary damages to the teachers?

## FACTS

Pursuant to legislative acts of the State of Ohio (OHIO REV.CODE, 3313.42) and the State of Indiana (IND.CODE 20–4–56–1), both enacted in 1921, providing for the establishment of a joint school between a school corporation in this state and an adjacent school corporation in another state, Local College Corner School District (of Ohio) and Union County School Corporation (of Indiana) constructed a school building (hereinafter "Union Elementary School"), a portion of which is in Indiana and a portion

in Ohio. After the construction of the building, the respective school boards operated as a joint board controlling the purchase of the school grounds, repairing or erecting buildings, and maintaining Union Elementary School.

On August 14, 1961, a joint meeting of the respective boards was held and certain policies were adopted which in effect established a formal "Joint Board of Education" to govern the Union Elementary School. On July 21, 1964, the parties entered into another written agreement again recognizing the "Joint Board" and reiterating the policies formally adopted at the above described joint meeting in 1961. Thereafter, on November 3, 1964, the United States District Court for the Southern District of Ohio recognized the Joint Board as the legal entity in charge of the administration of Union Elementary School.[1]

The Joint Union School Board has the responsibility of hiring the teachers employed at Union Elementary, subject to the approval of both local school corporations. The salaries of the teachers are paid proportionately by the Indiana and Ohio School Corporations, based on the percentage of students enrolled in the school from each of the two states. Typically, about 70% of the students reside in Indiana so that 70% of each teacher's salary is paid by the Union County School Corporation.

During the 1976–77 school year, the Union Elementary School was closed for 18 days due to inclement weather. Teachers were paid for all of those days, but they were also required to work three make-up days. Supplemental contracts for those three make-up days were issued by the Union County School Corporation to each teacher providing payments in an amount equal to the Indiana share of the total daily rate for each of those three days. The teachers were paid nothing extra by the Local College Corner School Corporation of Ohio for those make-up days.

During the 1977–78 school year, the school was closed for 19 days due to inclement weather. Ohio law required a minimum of 182 student days, OHIO REV. CODE 3313.48, and such minimum number of student days is a requirement for eligibility of funding from the State of Ohio unless waived by the Ohio Superintendent of Public Instruction. OHIO REV.CODE 3317.01. As the requirement was not waived, the students were required to make up 11 days and the teachers seven. No other school in the Union County School District required teachers to work make-up days. The teachers at Union Elementary received no extra pay from the Union County School Corporation for these days. Neither the Joint Union School Board nor the teacher's exclusive representative initiated any formal discussion or bargaining in connection with the issue of make-up days.

On December 4, 1978, the Joint Union School Board adopted a policy for school closings due to inclement weather by which the school would remain open as long as the Ohio school buses were operating. During the 1978–79 school year the Union County School Corporation was closed due to inclement weather on the dates of January 25 and 27, 1979 and February 5, 13, 21 and 28. Union Elementary School, however, remained open on these dates pursuant to the aforementioned policy.

On April 12, 1979, Donald L. Brown, in his individual capacity and in his official capacity as President of the National Education Association, Union County Teachers Association, filed a complaint for unfair practice with the IEERB. The complaint alleged the Indiana and Ohio local school corporation committed an unfair practice by unilaterally changing the pay procedures for the make-up of snow days in Union Elementary School, and implementing a new school closing policy.

---

1. In *College Corner Local School District, Etc. v. Union County School Corp.,* Case Number 2994 United States District Court for the Southern District of Ohio, filed November 3, 1964, the court recognized the Joint Board as a legal entity while holding that one local school corporation cannot change the operations and procedures without the consent and agreement of the other local school corporation.

On December 8, 1980, Hearing Examiner Richard W. Burdge conducted a hearing on the complaint on behalf of the IEERB. On July 1, 1981, Burdge entered his findings of fact, conclusions of law and recommended order, concluding (1) the IEERB had jurisdiction over the Joint Union School Board, and the Union County School Corporation, and (2) that both employers committed unfair labor practices in violation of sections 7(a)(1), (5), and (6) of the Certificated Educational Employee Bargaining Act by failing to bargain or discuss the scheduling of make-up days and the school closing plan. Burdge recommended an order that (1) the Joint Union School Board and the Union County School Corporation cease and desist from refusing to bargain wages, (2) cease and desist from refusing to discuss with the teachers' exclusive representative changes in the school calendar and (3) pay the teachers' supplemental wages.

After timely filings of exceptions by both Employers, the IEERB issued its decision and order adopting the Hearing Examiner's findings of fact and conclusions of law.

On March 9, 1982, both Employers sought judicial review pursuant to IND. CODE 4–22–1–14. The trial court originally set aside the IEERB's decision for failure to join an indispensable party. The court later reversed itself[2] and granted Brown's Motion to Correct Errors, affirming the decision and order of the IEERB.

## DECISION

*IEERB Jurisdiction Over The Joint Board And The Union County School Corporation*

■ The Joint Union School Board and Union County School Corporation initially contend the IEERB lacks jurisdiction over them as they are not "school employers" within the Act. Section 1(a) of the Act provides:

(a) The citizens of Indiana have a fundamental interest in the development of

harmonious and cooperative relationships between school corporations and their certificated employees;

Section 1(b) provides:

(b) Recognition by school employers of the right of school employees to organize, and acceptance of the principle and procedure of collective bargaining between school employers and school employee organizations, can alleviate various forms of strife and unrest; ...."

Section 11 of the Act provides the basis for the IEERB to exercise jurisdiction upon complaints of unfair labor practices. Section 11(a) provides:

Any school employer or any school employee who believes he is aggrieved by an unfair practice may file a complaint...."

Thus, the jurisdiction of the IEERB within the Collective Bargaining Act concerns disputes between school employers and school employees.

Section 2(c) of the Act defines school employers as:

"The governing body of each school corporation and any person or persons authorized to act for the governing body of the school employer in dealing with its employees."

We find that both the Union County School Corporation and the Joint Union School Board are employers within the Act.

The Union County School Corporation is a local school corporation established under Indiana law. The Union County School Corporation Board of School Trustees is the governing body of this entity. Pursuant to I.C. 20–4–56–1, the corporation formed a joint school (Union Elementary) with a local school corporation in the State of Ohio. These two entities organized the Joint Union School Board to operate the Union Elementary School. The Union County School Corporation, however, is still intimately involved in the school operation particularly in dealings with the school's teachers. The Hearing Examiner

2. The court determined, and it is not contested here, that the Local College Corner School District of Ohio was not an indispensable party because relief was sought only against the Indiana School Corporation, *i.e.* monetary damages for its share of the teachers' salaries.

found that the Indiana and Ohio local school boards pay the school's operational expenses, including teacher salaries, in proportion to the number of students residing in each state. Upon employment teachers receive two individual employment contracts, one from each school corporation. Typically Union County School Corporation pays 70% of the teachers' salaries. Any teacher hired by the Joint Board must have certification from the State of Indiana and must be approved by the Union County School Corporation. The character of the relationship between the local corporations and the teachers indicates that the Union County School Corporation is a school employer within the meaning of the Act.

Similarly, the Joint Union School Board is within the statutory definition. It was given its authority by the local school corporations in Indiana and Ohio. As such it is a "person or persons authorized to act for the school employer in dealing with its employees." I.C. 20–7.5–1–2(c). We conclude that the IEERB properly took jurisdiction over both boards.

### Duty To Bargain Make-Up Days And School Closing Plan

██ The trial court affirmed the IEERB's finding that the employers committed an unfair practice by failing to bargain with the teachers' exclusive representative on the issues of the scheduling of make-up days and the adoption of a school closing plan. IND.CODE 20–7.5–1–4 delineates the subjects of bargaining:

"Subjects of Bargaining. A school employer shall bargain collectively with the exclusive representative on the following: salary, wages, hours, and salary

and wage related fringe benefits. A contract may also contain a grievance procedure culminating in final and binding arbitration of unresolved grievances, but such binding arbitration shall have no power to amend, add to, subtract from or supplement provisions of the contract."

The IEERB concluded both employers committed an unfair practice by "fail(ing) to bargain the wages to be paid those teachers that had to make up snow days." The IEERB went on to state: "This Board has held that pay for making up of days lost due to snow is a mandatorily bargainable item under the Act. *Eastbrook Community Schools Board of School Trustees,* Case No. U–78–18–2815, 1978 IEERB Ann. Rep. 396 (1978)."

That finding, however, was later reversed. *Eastbrook Community School Corp. v. Indiana Education Employment Relations Board,* (1983) Ind.App., 446 N.E.2d 1007. The *Eastbrook* court found that the emergency closing contingency of make-up days did not in any way change the total number of hours or days that the teachers were required to teach, and this was within the managerial perogative outlined in 20–7.5–1–6(b),[3] a delegated right which the school board is prohibited from bargaining away.

The case at bar is similar to the *Eastbrook* case. The teachers at Union Elementary contracted to teach 182 days which was the regular school year in Ohio and receive wages for that amount of time. See Article VI, Master Contract, R. 257. Like *Eastbrook,* the scheduling of make-up days at Union Elementary did not affect the *amount* of days and hours only the *timing* of the teaching days. The teachers

---

**3.** "20–7.5–1–6 Rights of school employees and school school employers

    .    .    .    .    .

  (b) School employers shall have the responsibility and authority to manage and direct in behalf of the public the operations and activities of the school corporation to the full extent authorized by law. Such responsibility and activity shall include but not be limited to the right of the school employer to:
(1) direct the work of its employees;
(2) establish policy;

(3) hire, promote, demote, transfer, assign and retain employees;
(4) suspend or discharge its employees in accordance with applicable law;
(5) maintain the efficiency of school operations;
(6) relieve its employees from duties because of lack of work or other legitimate reason;
(7) take actions necessary to carry out the mission of the public schools as provided by law."

were only required to render teaching services for 182 days, the amount of time they agreed to.

The *Eastbrook* court noted the interests of another group not a party to that case or this one—the students. Judge Sullivan stated: "In considering the adversary positions of the school board and the teachers, a paramount interest must be heard. The interests of the board and the teachers are subordinate to the right of the children to a thorough and adequate education." *Eastbrook, supra,* at 1012.

The *Eastbrook* court was further guided by the position taken by the Supreme Court of New Jersey in *Board of Education of the Woodstown-Pilesgrove Regional School District v. Woodstown-Pilsgrove Regional Education Association,* (1980) 81 N.J. 582, 410 A.2d 1131;

"Establishing the school calendar ... is a non-negotiable managerial decision.... '[T]he commencement and termination of the school year and the scheduling and length of intermediate vacations during the school year, at least insofar as students and teachers are congruently involved, must be held matters of "educational policies" bearing too substantially upon too many and important nonteacher interests to be settled by collective bargaining or binding arbitration.'"

410 A.2d at 1136.

*Eastbrook* recognized that "the school calendar necessarily affects the days and hours during which teachers work" but nevertheless concluded "the calendar's effect on students and other public interests outweigh the private interests of the teachers." *Eastbrook, supra* at 1013. We agree that the rights of school employers under I.C. 20–7.5–1–6 to manage the school may often come into contact with the subjects of mandatory bargaining under 20–7.5–1–4, and a balancing of interests is needed. When considering a similar issue, the Supreme Court of Kansas suggested:

"The key, as we see it, is how direct the impact of an issue is on the well-being of the individual teacher, as opposed to its effect on the operation of the school system as a whole."

*National Education Ass'n of Shawnee Mission Inc. v. Board of Education of Shawnee Mission United School District No. 512,* (1973) 212 Kan. 741, 512 P.2d 426.

In the instant case, as in *Eastbrook*:

"In order for the school board to 'maintain the efficiency of school operations,' and to 'take actions necessary to carry out the mission of the public schools as provided by law,' (*See* I.C. 20–7.5–1–6(b)(5) and (7)), it must retain sufficient flexibility in making educational policy decisions and in modifying these decisions as the need arises. To require the school board to annually bargain with the teachers' representative as to the dates of the commencement and termination of school and whether school days are to be rescheduled should an emergency closing occur during that year, would unduly impede the board in exercising its fundamental duty to insure the children's right to quality education."

*Eastbrook, supra* at 1013.

■ Finally, the court in *Eastbrook* held, and we agree, that make-up days which do not change the amount of time the teachers agreed to teach "[do] not have such a direct and substantial impact upon salary, wages, hours and salary and wage related benefits" as to mandate bargaining. *Id.*

■ Brown next argues the Employer's prior practice of issuing supplemental contracts to the Union Elementary Teachers for make-up days elevates this issue to mandatory bargaining status. We disagree. To allow past practices to determine which matters are subjects of mandatory bargaining would be to subvert the Collective Bargaining Act. I.C. 20–7.5–1–1 *et seq.* The legislature has mandated which subjects are to be bargained, I.C. 20–7.5–1–4, and which subjects are those of managerial prerogative. I.C. 20–7.5–1–6. For the policy reasons stated above, we hold the issue of make-up days to be in the latter category. Relevant to our decision that the school officials are not allowed to bargain

away their duty to determine the school calendar is the following:

"Should educational policy be determined in teacher-school board negotiations where concessions—a necessary part of good faith bargaining—must be made to but one of the many interest groups the school is supposed to represent? Board policy adopted after careful consideration can be readily changed if it becomes evident that the policy is not in the best interests of the students or the community; a negotiated contract cannot. And more basically, what is in the best interest of the students and the community is not always in the best interest of the teachers."

Rund, *Symposium on Teacher Bargaining*, 50 Ind.L.J. 344, 350 (1975).

The reasoning is the same as to past practices. If the Union Elementary School Employers' past practice of paying Union Elementary teachers extra for make-up days is allowed to make this a mandatory bargainable subject, it may greatly inhibit the Joint Board in its scheduling of the school calendar. This could adversely affect the other non-teaching interests referred to in the *Eastbrook* opinion. Consequently we hold that the school Employers' past practice of paying the teachers extra did not elevate the subject of make-up days to mandatory bargainable status.

In his argument on this issue, Brown (the teachers' bargaining agent) places great emphasis on the fact that Union Elementary School teachers were the only teachers in the Union County School District required to make-up school days. We fail to see the importance of this point. Both sides concede, and indeed the most obvious fact in this litigation is, that the Union Elementary School is a unique entity that must serve two masters—the educational systems of both Indiana and Ohio. It is not unreasonable to find that the personnel of this school are subject to different rules than the personnel in other schools in the district which are formed solely under Indiana law. More importantly, the record reveals that the Teachers'

Association at Union Elementary is aware of the fact that their situation is unique. The master contract between the parties specifically mentions the length of the regular school year in Ohio. The teachers at Union Elementary were aware their situation was unique and agreed to a school year longer than Indiana's. Consequently, Brown's assertion that Union Elementary's calendar was a subject to be bargained because it differed from the rest of the bargaining unit's is not persuasive.

The above reasoning applies not only to the scheduling of make-up days during the 1977–78 school year but also to the school closing plan adopted by the Joint Union School Board during the 1978–79 school year. Neither action changed the number of days or hours that was agreed upon by the teachers and the school corporations. The Joint Union School Board's actions were within both the managerial perogative as established in I.C. 20–7.5–1–6 and the *Eastbrook* decision and were not subject to bargaining under I.C. 20–7.5–1–4.

### Duty To Discuss Make-Up Days And School Closing Plan

■ The trial court also affirmed the IEERB's finding that the Employers refused to discuss the scheduling of make-up days and the school closing plan. Subjects of discussion are defined in IND.CODE 20–7.5–1–5(a):

"Sec. 5. Subjects of Discussion.

(a) A school employer shall discuss with the exclusive representative of certificated employees, and may but shall not be required to bargain collectively, negotiate or enter into a written contract concerning or be subject to or enter into impasse procedures on the following matters: working conditions, other than those provided in Section 4; curriculum development and revision; textbook selection; teaching methods; selection, assignment or promotion of personnel; student discipline; expulsion or supervision of students; pupil-teacher ratio; class size or budget appropriations: Provided however, That any items included in the

1972–1973 agreements between any employer school corporation and the employee organization shall continue to be bargainable."

We agree with the IEERB's finding that the scheduling of make-up days and the school closing plan were items of mandatory discussion. While neither the IEERB decision and order nor the trial court opinion specifically refer to I.C. 20–7.5–1–5(a), we conclude these school calendar decisions are within the "working conditions" for which the statute mandates discussion.

The Employers contend that they never *refused* to discuss the make-up days and the school closing plan with the teachers representative, that it takes "two to tango," and if there was no discussion it was because it was not requested by the teachers' representative. This is tantamount to stating an employer has no duty to *initiate* discussion on an issue. While we agree that in many instances, the school employer has no duty to initiate discussion, *see Pace v. Caston School Corp.,* Case No. U–79–28–2650, 1979 IEERB Ann.Rep. 276; *Mullen v. Rensselaer Central Schools Corp.,* Case No. U–76–22–3815, 1976–77 IEERB Ann.Rep. 644, we find the Employers in this case did have such a duty.

IND.CODE 20–7.5–1–2(*o*) defines "discuss" as used in the Act:

> "(*o*) 'discuss' means the performance of the *mutual obligation* of the school corporation through its superintendent and the exclusive representative to meet at reasonable times to discuss, to provide meaningful input, to exchange points of view, with respect to items enumerated in Section 5 of this chapter...."

(Emphasis added.) The IEERB noted, and we agree, that the existence of the past practice of issuing supplemental contracts to the teachers during the 1976–77 school year placed the duty to initiate discussion as to the issue of make-up days of 1977–78 on the Employers. The teachers had been paid extra for make-up days during the previous school year, and it was not unreasonable for them to rely on the past practice. The Employers on the other hand were aware of the change regarding pay. It was their duty to initiate discussion on this issue.

We conclude differently, however, in regards to the school closing plan of the 1978–79 school year. The plan was adopted by the Joint Union School Board on December 4, 1978. At this point in time the representative of the teachers was aware that the past practice of compensating Union Elementary School teachers for make-up days had been changed. The representative was not entitled to rely on the past practice at this point. Consequently, the burden of initiating discussion as to a school closing plan for inclement weather was *not* on the employer. The first day on which the other schools in the Union County Corporation were closed while Union Elementary remained open was January 25, 1979. Thus, there was a period of 52 days between the time the plan was adopted and the first day of implementation. In such a situation it is not unreasonable to require the teachers representative to initiate discussion if it is dissatisfied with school policy. Any other rule, such as one requiring school boards to discuss, prior to adoption, any policy affecting "working conditions" is manifestly unworkable in a school situation. As I.C. 20–7.5–1–1(d), the "intent" section of the Act states:

> "(d) The relationship between school corporation employers, and certificated school employees is not comparable to the relation between private employers and employees among others for the following reasons: (i) a public school corporation is not operated for profit but to insure the citizens of the State rights guaranteed them by the Indiana State Constitution; (ii) the obligation to educate children and the methods by which such education is effected will change rapidly with increasing technology, the needs of an advancing civilization and requirements for substantial educational innovation; (iii) the Indiana General Assembly has delegated the discretion to carry out this changing and innovative educational function to the local govern-

ing bodies of school corporations, composed of citizens elected or appointed under applicable law, a delegation which these bodies may not and should not bargain away; and (iv) public school corporations have different obligations with respect to certificated school employees under constitutional and statutory requirements than private employers have to their employees."

If school boards were required to check with the teachers' representative *prior* to adopting any policy remotely affecting "working conditions," they would be impeded from performing the function delegated to them by the legislature. Consequently, we hold that policy changes on matters of general interest to the school community as a whole such as school calendar require the burden of initiating or requesting discussion to be placed on the teachers' representative.

We are mindful of our supreme court's holding in *Evansville-Vanderburgh School v. Roberts*, (1980) 273 Ind. 449, 405 N.E.2d 895 that a school corporation committed an unfair practice by failing to discuss a teacher evaluation plan prior to its implementation. We do not read this holding to require that mandatory discussion always take place *prior* to implementation of a policy. A teacher evaluation plan does not directly affect the school community as a whole in the way a school closing plan for inclement weather does. An evaluation plan is an administrative tool that will have its greatest effect on school officials and teachers. A school closing plan will directly affect everyone in the school community by determining attendance. Since the closing of school will affect the interests of students, parents, and other school employees in addition to teachers, there may be a necessity in adopting a plan. Indeed a school such as Union Elementary—which is without such a plan in December—may feel an immediate need to adopt one in order to be prepared for the upcoming winter. The school board should not be required to delay such a plan to discuss the views of one interest group. The better rule is to allow the school board to act if the policy is one

affecting not only the teachers but the school community as a whole.

We also note that neither I.C. 20–7.5–1–2(*o*) or I.C. 20–7.5–1–5 mentions discussion "prior to adoption." The Act requires discussion "at reasonable times." We do not think the legislature sought to unduly inhibit school boards from performing their appointed tasks.

In sum, we conclude the Employers committed an unfair practice by failing to initiate discussion on the subject make-up days for the 1977–78 school year but did not act unfairly in enacting a school closing plan for inclement weather during the 1978–79 school year without prior discussion on the matter.

*IEERB's Award Of Supplemental Pay*

■ The IEERB's order awarded the teachers at Union Elementary the portion of the teachers' daily pay funded by Indiana monies for those days in which the teachers were required to make-up snow days during the 1977–78 school year, and for those days during the 1978–79 school year for which the Union Elementary teachers worked but the rest of the teachers in the Union County School Corporation did not. This order was not compensation for missed pay, but rather additional pay for the 1977–78 make-up days and double pay for days during the 1978–79 school year when Union Elementary teachers were required to work, while other teachers in the Union County School Corporation were released. The IEERB order was affirmed by the trial order.

In this appeal, the Employers claim the award of supplemental pay is inappropriate because Ohio state law required the make-up days and that the IEERB is without authority to award monetary damages. Brown counters with the assertion that it was the trial court's order and not the IEERB's that awarded the damages.

In light of our findings that there was no duty to bargain either the make-up days of 1977–78 or the school closing plan of 1978–79 and that the duty to discuss was only as to the make-up days, we agree the award

of supplemental pay for both years is inappropriate. The only damages that may be awarded are those that arise out of the Employers' failure to discuss the issue of the make-up days. The Employers argue that because the teachers agreed to teach 182 days and Ohio law requires 182 days, any discussion could only relate to the time and manner of making up the days. Thus, they conclude that supplemental pay is inappropriate as the teachers would be required to teach those days anyway and that the only damages the teachers are entitled to are those arising out of the time and manner in which the days were made up. We disagree. Our reasoning that there was a duty on the part of the Employers to initiate discussion was based on the past practice of paying teacher extra for make-up days. It is reasonable to infer that had the Employers initiated discussion on this issue, much of the interaction would have concerned whether the Employers would continue to pay teachers for these days. Indeed, it may have been agreed to continue past practice. We cannot say the award of the Indiana portion of the teachers' salary is inappropriate.

■ We agree, however, with the Employers' contention that the IEERB is without statutory authority to issue a final order for an award of damages. No part of the Act, gives the IEERB the power to issue a final order for damages. In IND. CODE 20–7.5–1–11, our legislature set forth the remedies which the IEERB may impose, as follows:

"Unfair practices shall be remediable in the following manner:

(a) Any school employer or any school employee who believes he is aggrieved by an unfair practice may file a complaint under oath to such effect, setting out a summary of the facts involved in specifying the section of this chapter [20–7.5–1–1—20–7.5–1–14] alleged to have been violated.

(b) Thereafter, the board shall give notice to the person or organization against whom the complaint is directed and shall determine the matter raised in the complaint, and appeals may be taken in accordance with IC 1971, 4–22–1 [4–22–1–1 —4–22–1–30]. Testimony may be taken and findings and conclusions may be made by a hearing examiner or agent of the board who may be a member thereof. The board but not a hearing examiner or agent thereof, may enter such interlocutory orders after summary hearing as it deems necessary in carrying out the intent of this chapter."

In *Board of School Trustees of the Worthington-Jefferson Consolidated School Corp. v. IEERB*, (1978) 176 Ind.App. 354, 375 N.E.2d 281, the court addressed the question of whether the IEERB had the power to issue final orders of reinstatement for teachers who have been wrongfully discharged. Judge Lowdermilk concluded:

"The IEERB is given power to issue interlocutory or temporary orders but not power to issue final orders of reinstatement. There is no ambiguity in the statute; the legislature simply did not give the IEERB the power to issue final orders for the reinstatement of teachers who had been wrongfully discharged. Such power cannot be implied, and it cannot be assumed by the IEERB in the absence of a specific grant of such power by the legislature.

Our holding that the IEERB is without power to make final orders of reinstatement necessarily leads to the conclusion that a wrongfully discharged teacher must seek reinstatement pending appeal of the IEERB's decision to the circuit court, such order to become permanent upon the affirmance of the IEERB's factual determination in favor of the teachers. In the event that a School Board fails to pursue the appeal and fails to reinstate the wrongfully discharged teacher, an action can be brought. In any event before the circuit court can order the preliminary injunction to be made permanent it must first review the evidence presented to the IEERB to determine whether such evidence was sufficient, as a matter of law, to support the factual determinations of the IEERB. In

so doing the circuit court must not weigh the evidence, nor judge the credibility of the witnesses.

By failing to give the IEERB the power to issue final orders of reinstatement, our legislature, by accident or by design, appears to have created a bipartite proceeding wherein an aggrieved teacher must first go to the IEERB to determine whether the school board has committed an unfair practice, within the meaning of IC 20–7.5–1–1, *et seq., supra,* and then the teacher must go to the courts to obtain a permanent remedy, based upon the IEERB's factual determinations. Although the circuit court utilizes its power of judicial review in affirming or reversing the factual determinations of the administrative agency, *the court by using its inherent equitable powers may fashion a remedy to cure whatever injustice has taken place.*

We have determined in the case at bar that pursuant to IC 20–7.5–1–11, *supra,* the IEERB has power to enter interlocutory orders of reinstatement while the action is pending before the IEERB, but that the IEERB is without power to enter final and permanent orders of reinstatement. Therefore, although the Knox Circuit Court properly affirmed the factual determinations of the IEERB, the court erred in affirming the IEERB's final order of reinstatement. We, therefore, affirm the trial court's affirmance of the IEERB's factual determinations, and remand the cause to the trial court with instructions that the trial court enter an original order of mandatory relief reinstating Walton, Terrell, and Hunter to their respective teaching positions and that the trial court give whatever other relief it deems to be just and equitable."

*Id.* 375 N.E.2d at 284. (Citations omitted.) (Emphasis added.)

An order awarding monetary damages is similar to an order for reinstatement in that it is a final order. We are in agreement with the *Worthington-Jefferson* court and hold the IEERB has no power to issue a final order for damages.

We need not address Brown's contention that it was the trial court and not the IEERB who issued the final order awarding back pay. We have concluded that the IEERB and the trial court erred as a matter of law in determining that the Employers had a duty to bargain the issues of the make-up days and the school closing plan and had a duty to initiate discussion on the school closing plan. Consequently it is necessary to remand this cause to the trial court for determination of the proper remedy for the Employers' unfair practice of failing to discuss the issue of make-up days during the 1977–78 school year.

In conclusion, we hold that the IEERB has jurisdiction over both the Joint Union School Board of Education and the Union County School Corporation Board of School Trustees; the issues of the make-up days of 1977–78 and the school closing plan of 1978–79 were not subjects of mandatory bargaining—however, these issues were subjects of mandatory discussion; the Employers had a duty, with respect to the make-up days of 1977–78, to initiate discussion but no such duty with respect to the 1978–79 school closing plan, and that the IEERB has no power to issue a final order of monetary damages.

Reversed and remanded.

CONOVER and YOUNG, JJ., concur.