Carol VAN CAMP and Joseph Weaver,
Appellants (Plaintiffs Below),

v.

OAK HILL UNITED SCHOOL
CORPORATION, Appellee
(Defendant Below).

No. 2–1083A381.

Court of Appeals of Indiana,
Second District.

April 10, 1985.

Rehearing Denied May 24, 1985.

Wayne O. Adams, III, Robin L. Babbitt, Joseph H. Hogsett, Bingham Summers Welsh & Spilman, Indianapolis, for appellants (plaintiffs below).

Jan P. Abbs, Alan H. Lobley, Ice Miller Donadio & Ryan, Indianapolis, for appellee (defendant below).

SULLIVAN, Judge.

Plaintiffs, Carol VanCamp (VanCamp) and Joseph Weaver (Weaver), appeal from a summary judgment entered in favor of Oak Hill United School Corporation (Oak Hill) upon their respective claims for back pay and for declarative and injunctive relief.

Only one issue is presented:

Whether VanCamp and Weaver were entitled to receive full compensation pursuant to I.C. 20–6.1–5–9, with respect to days on which they were absent because of illness even though their respective schools were closed on those days because of inclement weather.

The parties filed cross-motions for summary judgment. On July 7, 1983, the court granted Oak Hill's motion.

We reverse as to VanCamp and affirm as to Weaver. The facts are neither complicated nor in dispute. Both VanCamp and Weaver were employed as teachers by Oak Hill for the 1980–81 school year. Pursuant to their contracts, they were entitled to seven paid sick days and two paid personal days. Their respective employee handbooks requested that in the event of illness, VanCamp notify the school prior to 7:00 A.M., if possible, and that Weaver do so prior to 6:30 A.M. VanCamp's handbook also requested that she inform the office during the afternoon of a day she was ill if she would also be unable to work the following day.

VanCamp contracted severe bronchitis over the Christmas break but had already used her available sick days. The first two school days following the Christmas break, January 5 and 6, VanCamp was unable to report for work and, as permitted, used her personal days as sick days. The evening of January 6, VanCamp called the school principal and told him she would be unable to report for work the next day. On January 7, at approximately 6:00 A.M., Oak Hill cancelled school because of snow. Consequently, Oak Hill was not required to hire a substitute teacher for VanCamp's classroom. Oak Hill, however, deducted one day's pay $77.84)[1] from VanCamp's next paycheck because she had exceeded the allowable paid days for illness and personal matters.

Weaver's situation was somewhat similar. Early on the morning of February 10, 1981, Weaver informed his school that he was taking a sick day due to an illness in his immediate family.[2] After the school day commenced, Oak Hill cancelled school and sent everyone home at 9:00 A.M. One day was deducted from Weaver's total number of remaining available sick days, thereby resulting in a reduction of his terminal leave pay at the end of the school year.

■ This dispute concerns the proper interpretation of I.C. 20–6.1–5–9 (Burns Code Ed.Supp.1984). It provides, in pertinent part:

"If during the term of the teacher's contract:

(1) the school is closed by order of the:

(A) school corporation; or

(B) health corporation; or

(2) school cannot be conducted through no fault of the teacher, *the teacher shall receive regular payments during that time.*" (Emphasis supplied)

The teachers' basic argument is that this statute requires the payment of all teachers' base salary whenever school is closed due to no fault of their own, without regard to a teacher's potential availability for work on that particular day. Oak Hill contends that the statute entitles teachers only to that salary which each of them would have received had the school day not been cancelled, and therefore that when teachers report that they are unavailable to work on a given day their salaries must be adjusted accordingly, regardless of subsequent events resulting in school cancellations. More specifically, Oak Hill contends that I.C. 20–6.1–5–9 only requires it to pay teachers who would have worked but for the school's closing. Therefore, it is submitted, I.C. 20–6.1–5–9 requires that the school's closing be the cause of each teacher's absence.

The statute neither speaks of causation with respect to a teacher's absence nor

---

1. The parties have agreed that this was Van-Camp's *per diem* salary and was the amount deducted from her paycheck for the pay period in dispute.

2. Both Weaver's contract and state law provide that sick days may be used for an illness in a teacher's immediate family. *See* I.C. 20–6.1–5–6(b).

includes a precondition of teacher availability. The only questions posed by the statute are whether school was in fact closed, and, if so, whether it has the fault of the corporation's teachers.

Oak Hill cites *Charlestown School Township v. Hay* (1881) 74 Ind. 127, *Henry School Township v. Meredith* (1904) 32 Ind.App. 607, 70 N.E. 393, and *School of Carthage v. Gray* (1894) 10 Ind.App. 428, 37 N.E. 1059, to support its contention that the teachers' availability to work on a given day is a prerequisite to payment. None of these cases, however, were decided pursuant to this school closing statute or its predecessor, I.C. 20–6–8–2 (Burns Code Ed. 1975). Therefore, their holdings are not determinative of the question before us.

All of the cited cases involve contractual provisions allegedly breached by conduct on the part of the school corporation which prevented the teacher's performance of his or her teaching duties.

The contractual rationale of the *Gray* case, in the sense of impossibility of performance, is questionable in that it contemplated recovery by a teacher even though the school closing was occasioned by a smallpox epidemic when the teacher was "present, ready and willing to teach." The *Gray* case must be compared with *Gregg School Township v. Hinshaw* (1921) 76 Ind.App. 503, 132 N.E. 586, which held that a school closing because of a flu epidemic rendered the contract impossible to perform. The teacher was not entitled to payment in such instance. *But see* 1917–1920 Op.Att'y Gen. 239 which expressed the view that a teacher who himself is ill is not ready, willing and able to perform his contract and may not recover wages for days on which the school is closed by reason of an epidemic.

In any event, however, the court in *Gray* correctly observed that the misfortune which caused the closing could have been contemplated by the contract. In this respect our case with regard to VanCamp is not dissimilar. Indiana Code 20–6.1–5–9 contemplates school closings because of inclement weather but does not, as it could have done, disqualify a teacher who for other reasons was not available to teach.[3]

Accordingly, it was incumbent upon the school corporation to pay the "regular payments" due VanCamp under the statute with respect to the snow days in question.

Oak Hill additionally focuses upon the word "regular" as the statute describes those payments to be made. It is contended that regular payments means that pay which a teacher would have received had the schools been open, and that, therefore, one day's pay was properly deducted for the snow days in question.

It is our duty to give effect to the legislature's intent in construing a statute. That intent is ordinarily determined by ascribing the plain and ordinary meaning to the language used. *DeKalb County Welfare Board v. Lower* (1983) 3d Dist., Ind.App., 444 N.E.2d 884, *trans. denied.*

▮ The statutory scheme for teachers' contracts is based upon a concept of a fixed salary to be paid in installments for a nine month school year. *See* I.C. 20–6.1–5–1. Similarly, Oak Hill's standard contract shows a salary schedule amount based upon a nine month school year period. The contract provides further that the salary will be paid in twenty-six payments. Therefore, the plain interpretation of I.C. 20–6.1–5–9 requires Oak Hill to pay its teachers the amount each would have received for the pay period in which school was closed notwithstanding a particular

---

**3.** The case before us does not involve any issue concerning makeup days and payment therefor pursuant to contract or otherwise. Accordingly, *Eastbrook Community Schools Corporation v. Indiana Education Employment Relations Board* (1983) 2d Dist., Ind.App., 446 N.E.2d 1007, *reh. denied* 450 N.E.2d 1006, dealing with such issue in the context of contract negotiation is not germane. In *Eastbrook*, however, we noted that absent legislation to that effect, school boards were not required to compensate teachers for make-up days. *Cf.* 1917–1920 Op.Atty.Gen. 239, *supra*, which opined that a teacher who can and does recover compensation for days on which school is closed may not be compelled to make up those days absent a contract provision to that effect.

teacher's unavailability to teach on a cancelled day. Consequently, VanCamp is entitled to back pay, with interest, for January 7, 1981.

 Weaver's claim requires a different analysis. Weaver called in sick on the morning that school was later cancelled. Oak Hill deducted one full sick day from Weaver's available days. The question thus presented is, at what point in the day is a school deemed to be closed, thereby triggering application of I.C. 20–6.1–5–9.

The regulations for school minimum standards, 510 I.A.C. 4–2–1(c)(6) (1984 Ed.) state:

"The minimum length of the normal school day shall be four and one-half [4½] hours in grades three [3] and four [4]; five and one-half [5½] hours in grades [5] and six [6]; six [6] hours in grades seven [7] to twelve [12]."

An argument may be made, therefore, that school has been closed for purposes of I.C. 20–6.1–5–9 if cancellation occurs before the minimum length of the school day has been reached. Indiana Administrative Code 4–2–1(c)(6), however, does not contemplate emergency closings and would appear to relate solely to a normal instructional day. Furthermore, to accept this argument would be to ignore the preceding regulatory section which specifically contemplates emergency closings at any time during a school day which has commenced. It states in part:

"In the event of emergency during the school day, school may be dismissed in the interest of pupil safety, in which case the day(s) counts as an instructional school day."[4] 510 I.A.C. 4–2–1(c)(5) (1984 Ed.)

Weaver's school day had commenced and was only thereafter terminated. We hold that in such instance the payment provisions of I.C. 20–6.1–5–9 are not made applicable. This is not to say that payment for partial days is prohibited. Such might be

the subject of the contract between the teacher and the school corporation.

For the foregoing reasons, the summary judgment in favor of the Oak Hill United School Corporation is reversed as to Van-Camp and affirmed as to Weaver. The cause is remanded for further proceedings consistent herewith.

BUCHANAN, C.J., and SHIELDS, J., concur.

---

4. The regulations here cited remain in substantially the form and content as when first pro-

mulgated in May, 1978.