Kay HALLEY, Richard A. Beymer, and John Leech, on behalf of themselves and all others similarly situated, Appellant,

v.

BOARD OF SCHOOL TRUSTEES OF the BLACKFORD COUNTY SCHOOL CORPORATION, Appellees.

No. 05A04-8710-CV-311.

Court of Appeals of Indiana, Fourth District.

Dec. 19, 1988.

Richard J. Darko, Richard S. Pitts, Lowe Gray Steele & Hoffman, Indianapolis, for appellant.

Robert W. Rund, Indianapolis, Robert J. Barry, Peterson Ervin & Barry, Hartford City, for appellees.

MILLER, Judge.

This is a class action instituted by the named plaintiffs, Kay Halley, Richard A. Beymer and John Leech, on behalf of themselves and all teachers in the Blackford County School Corporation who were required to make up school closing days (3) without compensation. The teachers appeal the trial court's judgment in favor of the Board of School Trustees of the Blackford County School Corporation [Board],

denying their complaint for damages and injunctive relief.

The teachers raise the following issues: 1. Whether the Board's requirement that teachers make up days lost because of school closings without additional compensation was in violation of the School Closing Statute.

2. Whether the Board breached the collective bargaining agreement with the Blackford County Teachers Association [BCTA] by requiring the teachers to work the rescheduled days without additional compensation.[1]

FACTS

In August, 1978, the Board adopted a flexible calendar for student and teacher attendance. The action was taken because during the 1976–77 and 1977–78 school years, school was closed for extensive periods because of snow and the need for energy conservation. The flexible calendar provided if more than five days were lost in each semester the additional days would be made up on Saturdays, spring vacation or during the week following the spring semester. A similar calendar was adopted in the years following 1978–79. During the 1983–84 school year, school was closed for eleven and one half days. On April 18, 1984 the School Board designated June 2, 1984 as a make up day. Teachers were required to work on that day and were not paid additional compensation. In 1984–85 twelve days of school were lost due to snow. The School Board designated June 3 and 4, 1985 as make up days. Again the teachers did not receive additional compensation for those days.

In the 1974–75 collective bargaining agreement (and in prior agreements) the school calendar was incorporated into the agreement, specifying the dates students and teachers were to be in attendance and specifying one paid holiday and other unpaid holidays when school was not in session. In the collective bargaining agree-

---

1. The teachers also allege the trial court erred in determining the School Board's policy of flexible calendaring was within its exclusive authority. As the teachers recognize in their brief, this issue is directly related to the issue of the breach of the collective bargaining agreement and will be discussed under that issue.

ments following 1974–75 the dates of attendance were not specified (except for the beginning date) and the salary schedule was based on 180 days of teacher's service.

The individual Regular Teacher's Contract for the 1983–84 and 1984–85 school years contained an asterick in the place for the specified ending date. This asterick referred to a notation referring to the calendar adopted for the year in question. A few of the teachers including some of the named plaintiffs crossed out this notation before signing the 1983–84 individual contract. All teachers taught on the make up days. When the Board refused to pay additional compensation, the suit was filed.

Additional facts will be given when necessary for our decision.

## DECISION

### I. *School Closing Statute*

The teachers contend the Board's refusal to pay additional compensation for the rescheduled days violated the School Closing Statute which, during the years in question, read:

"If during the term of the teacher's contract:

(1) the school is closed by order of the:

(A) school corporation; or

(B) health authority; or

(2) school cannot be conducted through no fault of the teacher, the teacher shall receive regular payments during that time." IND.CODE 20–6.1–5–9.

This code section was amended in 1987 by P.L. 390–1987, Sec. 7 which added the following language:

"However, whenever a cancelled student instructional day (as defined in I.C. 20–10.1–2–1) is rescheduled to comply with I.C. 20–10.1–2–1 each teacher and (notwithstanding I.C. 20–9.1–3–5) each school bus driver shall work on that rescheduled day without additional compensation."

The teachers contend before the amendment was enacted the statute required the teachers to be paid additional compensation for rescheduled days. They base their interpretation on the legislative history of the statute and argue the amendment was

a "radical departure" from the statute in effect during the 1983–84 and 1984–85 school years.

The Board contends the legislature, in enacting I.C. 20–6.1–5–9, did not intend to require additional compensation for rescheduled days. They argue the legislature intended the amendment to be read in conjunction with P.L. 390–1987, Sec. 20 which amended IND.CODE 20–10.1–2–1 and was enacted in the same legislative session. I.C. 20–10.1–2–1, as amended, requires school to be conducted for at least 175 student instructional days in 1987–88 and at least 180 such days thereafter. They contend before the amendments were enacted, school boards had discretion to reschedule days and pay additional compensation and the intent of the legislature was merely to remove that discretion.

In construing a statute, this court must ascertain and implement the legislature's intent by giving effect to the plain and ordinary meaning of the language used. *Irmscher v. McCue* (1987), Ind.App., 504 N.E.2d 1034. We may also consider the statute's legislative history including legislation passed before or after the statute's enactment. *Wright v. Fowler* (1984), Ind.App., 459 N.E.2d 386. It is presumed that an amendment of a prior statute is intended to change the law unless it clearly appears the amendment was passed to clarify the legislature's original intent. *Id.*

In the late 1800's, Indiana courts determined teachers were entitled to be paid when school was closed through no fault of their own. *Charlestown School Township v. Hay* (1881), 74 Ind. 127 (trustee failed to provide school building after school burned); *School Town of Carthage v. Gray* (1894), 10 Ind.App. 428, 37 N.E. 1059 (school closed during diptheria epidemic). During World War I, some schools were closed by order of county fuel administrators. Such closings were authorized by federal law to conserve fuel during the war. 20 Op. Att'y Gen 257 (1917). The Attorney General issued an opinion indicating, in the absence of a specific contract provision, teachers did not have to be paid

when schools were closed by order of the fuel administrator because the contract between the teacher and the school trustees was impossible to perform. *Id.* In 1921, the court of appeals approved this reasoning in *Gregg School Township v. Hinshaw* (1921), 76 Ind.App. 503, 132 N.E. 586. In *Gregg*, school was closed by order of the local board of health because of an influenza epidemic. The board of health had express statutory authority to close the school under 1909 Ind.Acts 342. The *Gregg* court distinguished *Charlestown* and *Carthage* on the basis that in those cases there was no statutory authority for closing the school. However, in *Gregg* the statutory authority was in effect when the contract was entered into, and was deemed to be a part of the contract. Because it was impossible to legally perform the contract due to the board of health's order, the school board was not required to compensate the teacher when school was closed.

Against this background, the legislature enacted the School Closing Statute, 1921 Ind.Acts 195, now I.C. 20–6.1–5–9. This statute remained substantially unchanged until the addition of the 1987 amendment. P.L. 390–1987, Sec. 7.

None of the early cases dealt with the issue of compensation for make up days. However, it appears to have been common practice for teachers to make up lost days without additional compensation. This practice was noted by the *Carthage* court, which said:

> "Besides, it is not made to appear by the answer, that the days lost on account of the order of the board of health, or the prevailing contagion, could not have been properly and conveniently made up after the close of the term.... The custom of allowing teachers in the public schools to do this has grown to be such a common one that courts are bound to take judicial notice of the same. There is nothing in the contract before us which requires the teaching to be done on consecutive days, and for aught that appears, the term may be extended a reasonable number of days, when necessary, until the contract has been fulfilled."

*Carthage, supra* at 432–33, 37 N.E. at 1061.

■ We find nothing in the early cases which suggests that if teachers made up the lost school days, they were to be paid additional compensation. The only support for such a proposition appears in an Attorney General's opinion which suggested rescheduled days would form the basis for a new contract. 20 Op. Att'y Gen. 239 (1917). This court is not bound by official opinions of the Attorney General. *Medical Licensing Board of Indiana v. Ward* (1983), Ind.App., 449 N.E.2d 1129. In addition, we do not find this opinion to be persuasive, as it cited no authority and was contrary to a practice judicially noticed by this court. *Carthage, supra.*

■ A statute must be construed in light of the factual and legal situation in existence at the time it was enacted. *Rose v. State* (1976), 168 Ind.App. 674, 345 N.E.2d 257. The original School Closing Statute was enacted almost immediately after the *Gregg* decision and appears to have been a reaction to that decision. This legislation, coming as it did on the heels of the *Gregg* decision, suggests the legislature's intent was to restore the teacher's right to compensation to those rights afforded before the *Gregg* decision. At that time, the courts had not considered additional compensation for rescheduled days. The statute makes no mention of additional compensation even though it appears to have been common practice for teachers to make up lost days without additional pay. If the Legislature had intended teachers to receive additional compensation, it could have included such a provision in the statute. As this court noted in *Bonge v. Risinger* (1987), Ind.App., 511 N.E.2d 1082, 1084; "[i]n construing a statute it is just as important to recognize what the statute does not say as it is to recognize what it does say."

The teachers also contend I.C. 20–6.1–5–9 must be read in conjunction with IND. CODE 20–6.1–4–3 which reads:

> "Each contract entered into by a teacher and a school corporation must:
> (1) Be in writing;

(2) Be signed by both parties; and

(3) Contain:

 (A) The beginning date of the school term as determined annually by the school corporation;

 (B) The numbers of days in the school term as determined annually by the school corporation;

 (C) The total salary to be paid during the school year; and

 (D) The number of salary payments to be made during the school year."

The teachers would have us read this statute to mean the contract must contain a definite ending date. They claim; "[t]he legislature also required the school district to set out the number of months [2] in the school term and make them definite so that a teacher would not be required to make up days beyond the school term without receiving additional compensation." (Teachers's brief, p. 17) We disagree with this construction.

In determining legislative intent this court considers other statutes on the same subject. *Hurwich v. Zoss* (1976), 170 Ind. App. 542, 353 N.E.2d 549. It is presumed the legislature in enacting legislation has in mind existing statutes on the same subject. *Pea v. Pea* (1986), Ind.App., 498 N.E.2d 110. Such statutes must be construed together so as to harmonize and give effect to all provisions of each. *Adult Group Properties Ltd. v. Imler* (1987), Ind.App., 505 N.E.2d 459.

IND.CODE 20–6.1–4–3 does not state the contract must contain a definite ending date, nor does it require the days to be consecutive. Again, we note the importance of what the statute does not say. *Bonge, supra.* There is nothing in I.C. 20–6.1–4–3 which would require teachers to be paid additional compensation for rescheduled days.

The teachers argue because there is a presumption an amendment changes the law, the 1987 amendment to I.C. 20–6.1–5–9 which provides teachers are not to be paid additional compensation for rescheduled

days indicates that prior to the amendment the statute required such compensation. However, the 1987 amendment must be read in conjunction with the Teacher's Collective Bargaining Act, IND.CODE 20–7.5–1–1 to 14 and IND.CODE 20–10.1–2–1 which requires school be conducted for a minimum number of days each year.

This court has recently considered the question of additional compensation for rescheduled days in the context of the collective bargaining act. In *Eastbrook Community Schools v. Indiana Education Employment Relations Board* (1983), Ind. App., 446 N.E.2d 1007, *reh. granted*, 450 N.E.2d 1006, *trans. denied*, this court determined the school board was not required to bargain the school calendar with the teachers' representative. The school board in *Eastbrook*, had adopted a flexible calendar similar to the one adopted in this case. The teachers' representative claimed the school board was required to bargain the calendar pursuant to IND.CODE 20–7.5–1–4 which required the school employer to "bargain collectively with the exclusive representative on the following: salary, wages, hours, and salary and wage related fringe benefits." The *Eastbrook* court concluded the subject of the school calendar fell exclusively within the school board's managerial prerogative which the school board was prohibited from bargaining away under 20–7.5–1–1(d)(iii). The court noted:

"[The flexible calendar] does not change the total number of days or hours on which teachers are required to teach. The teachers' contracts provide compensation for days missed due to an emergency school closing. The clause does not affect this salary term. It merely requires the teachers to render services, for which they have already been paid, on days other than those originally scheduled. To award teachers compensation for having to make up days for which they have been fully compensated amounts to double payment for the same

---

**2.** This is a reference to the earlier form of the statute which read in terms of months rather than days. 1921 Ind.Acts 195.

number of teaching hours." *Id.* at 1013–14 n. 2.

In *Union County School Corp. v. Indiana Education Employment Relations Board* (1984), Ind.App., 471 N.E.2d 1191, the school board required teachers to make up days without additional compensation even though additional compensation for make up days had been paid the year before. We held compensation for make up days was not a subject of mandatory bargaining but was a subject of mandatory discussion pursuant to I.C. 20–7.5–1–5(a).[3] Issues which are subject to mandatory discussion "may but shall not be required to" be bargained collectively. *Id.* Therefore, before the enactment of the 1987 amendment, a school board could have bargained the issue of additional compensation. The amendment foreclosed that option.

Finally, the teachers argue if the statute prior to amendment is interpreted to mean no additional compensation is required, "the statute would become ineffectual or meaningless." (Teacher's reply brief, p. 5) We disagree. The legislature did not delete any of the language of I.C. 20–6.1–5–9. It is not to be presumed the legislature intended to enact a meaningless statute. *Lickliter v. Rust Feed & Seed & Lumber, Inc.* (1981), Ind.App., 421 N.E.2d 10. The statute has meaning apart from requiring additional compensation. In *Van Camp v. Oak Hill United School Corp.* (1985), Ind. App., 476 N.E.2d 152, this court held a school board could not take a deduction from a teacher's salary when school was closed through no fault of the teacher, even though the teacher could not have taught on that day because of illness and would have had salary deducted if school had not been closed.[4]

We conclude, the legislature in enacting I.C. 20–6.1–5–9 did not intend to require teachers be paid additional compensation for rescheduled days, and therefore the School Board did not violate the statute by refusing to do so.

## II. Collective Bargaining Agreement

The teachers assert the Board breached the collective bargaining agreement between the BCTA and the board by unilaterally changing the meaning of one hundred eighty (180) days in the contract. The teachers argue the contract required them to hold themselves *available* to teach for one hundred eighty days. The School Board argues the contract required the teachers to *teach* one hundred eighty days less up to five days each semester which were not required to be rescheduled if school was closed.

The teachers' argument is primarily based on their mistaken belief I.C. 20–6.1–5–9 required additional compensation for rescheduled days. They correctly assert that existing law is incorporated into a contract. *Evansville–Vanderburg School Corp. v. Moll* (1976), 264 Ind. 356, 344 N.E.2d 831. However, as we explained, I.C. 20–6.1–5–9 did not require such compensation. Therefore, the statute does not support their interpretation of the meaning of one hundred eighty days in the contract.

We agree with the interpretation of such language in the *Eastbrook, supra,* and *Union City, supra* cases. As the *Eastbrook* court observed: "The emergency closing contingency did not in any way change the total number of hours or days on which the teachers were required to teach." *Eastbrook, supra* at 1012. In this case, in both the 1983–84 and 1984–85 school years, the teachers were paid for one hundred eighty

---

**3.** "A school employer shall discuss with the exclusive representative of certificated employees, and may but shall not be required to bargain collectively, negotiate or enter into a written contract concerning or be subject to or enter into impasse procedures on the following matters: working conditions, other than those provided in Section 4; curriculum development and revision; textbook selection; teaching methods; selection, assignment or promotion of personnel; student discipline; expulsion or su-

pervision of students; pupil-teacher ratio; class size or budget appropriations: Provided, however, That any items included in the 1972–73 agreements between any employer school corporation and the employee organization shall continue to be bargainable."

**4.** The teacher in question had used all available sick leave and personal days.

days but actually taught less than that number.

The teachers contend *Monroe County Community School v. Frohliger* (1982), Ind.App., 434 N.E.2d 93, supports their position that the Board breached the agreement. In *Monroe* the teachers and the school corporation entered into an agreement which provided that the school year was to begin on August 23, 1976. The teachers' salaries were determined by multiplying the individual teachers' salary by the number of days in the fall term divided by the number of days in the school year. The school board unilaterally changed the starting date to August 30, 1976, thereby reducing the number of days in the school term from one hundred eighty to one hundred seventy-five and causing the teachers to lose five days of salary. The court held this action was a breach of the collective bargaining agreement. *Monroe* is not applicable to this case. In *Monroe* the school board unilaterally reduced both the number of days taught and the teachers' salary. In this case, the teachers' salaries were not reduced and they were paid for more days than they actually taught.

 Finally, we note the school board (pursuant to I.C. 20–7.5–1–5(a) as explained in *Union County, supra*) could have bargained both the calendar and additional compensation for rescheduled days. However, it was not required to do so. The record in this case indicates the School Board discussed the calendar and additional compensation with the BCTA but refused to bargain the issue. During the bargaining on the 1983–84 and 1984–85 agreements, the BCTA submitted proposals calling for additional compensation for rescheduled days. The School Board refused to bargain these proposals. Several of the named plaintiffs, including John Leech, who was a member of the BCTA's bargaining team for the years in question, testified they were aware the School Board intended to require them to teach the rescheduled days without additional compensation. The record does not support the teachers' assertion that one hundred eighty days meant days teachers were to be available to teach.

We conclude the School Board did not breach the collective bargaining agreement when it required the teachers to teach on the rescheduled days without additional compensation.

AFFIRMED.

CONOVER, P.J., and NEAL, J., concur.