Steven W. PEELE, Appellant–Defendant,

v.

Robert H. GILLESPIE, Jr., Appellee–Plaintiff.

No. 22A01–9506–CV–172.

Court of Appeals of Indiana.

Dec. 12, 1995.

Rehearing Denied Feb. 26, 1996.

James W. Treacy, Treacy, Grossman & Sullivan, Indianapolis, Richard G. Bolin, New Albany, for appellant.

Barry N. Bitzegaio, William C. Moyer, Lorch & Naville, New Albany, for appellee.

## OPINION

BAKER, Judge.

In this opinion, we decide: 1) whether a defendant in a personal injury action may introduce evidence showing that the injured plaintiff has received underinsured motorist benefits from his own insurer and 2) whether the defendant is entitled to a set-off from any judgment entered against him in the amount of the underinsured motorist benefits received by the plaintiff. In the present case, appellant-defendant Steven W. Peele contests the trial court's denial of his motion for partial summary judgment and grant of appellee-plaintiff Robert H. Gillespie, Jr.'s motion for partial summary judgment. Specifically, Peele contends that the trial court erred in determining that he was not entitled to a set-off of $100,000.00, the amount of underinsured motorist benefits that Gillespie recovered from his insurer, Prudential Insurance Company of America (Prudential).

## FACTS

On June 4, 1992, Gillespie, a passenger in an automobile driven by Peele, was injured in an automobile accident. At the time of the accident, Gillespie's father had an automobile liability insurance policy through Prudential, which provided Gillespie with insurance coverage including underinsured motorist benefits. Gillespie sued Peele seeking damages for his injuries and also filed a claim with Prudential under the underinsured motorist coverage provision.

Initially, Prudential notified Gillespie that he was not entitled to any insurance proceeds. Thus, pursuant to the arbitration provision in the insurance policy, Gillespie requested arbitration which resulted in an award to him and a finding that Prudential lost its right to subrogation because it failed to advance payment to Gillespie as required by IND.CODE § 27-7-5-6(b).[1] R. at 43. As a result of the arbitration award, Prudential paid Gillespie a total of $100,000.00 in underinsured motorists benefits. Thereafter, Peele asserted in his answer to Gillespie's complaint that he should receive a set-off from any judgment entered against him for the $100,000.00 that Prudential paid to Gillespie as compensation for his injuries. In response, Gillespie filed a motion for partial summary judgment alleging that no genuine issues of material fact exist and that as a matter of law Peele is not entitled to introduce evidence that Gillespie received $100,000.00 in underinsured motorist benefits from his own insurance carrier nor is Peele entitled to a $100,000.00 set-off from any judgment entered against him. Peele filed a cross-motion for partial summary judgment in which he claimed that as a matter of law he was entitled to the set-off. After holding a hearing on the cross-motions for partial summary judgment, the trial court granted Gillespie's motion and denied Peele's motion. Thereafter, pursuant to Ind.Appellate Rule 4(B)(6), the trial court certified the issue regarding set-off for interlocutory appeal to this court.

## DISCUSSION AND DECISION

### I. Standard of Review

 Summary judgment is appropriate only when the evidentiary matter designated to the trial court shows that no genuine issues of material fact exist and the moving

---

1. I.C. § 27-7-5-6(b) provides that an insurer providing underinsured motorist coverage loses its right to subrogation against an underinsured motorist if the insurer has been provided with written notice that the underinsured motorist has made an offer of settlement to the insured, and the insurer within 30 days after receiving such notice fails to advance payment to the insured in an amount equal to the amount provided for in the offer of settlement. At the time of the acci-

dent, Peele's liability insurance carrier was the National Insurance Association (NIA). NIA offered Gillespie its policy limits and Gillespie in turn notified Prudential of the offer. However, Prudential failed to advance to Gillespie an amount equal to the amount offered by NIA. Thus, as determined by the arbitrator, pursuant to I.C. § 27-7-5-6(b) Prudential lost its right to subrogation. Record at 43.

party is entitled to judgment as a matter of law. *Tucher v. Brothers Auto Salvage Yard* (1991), Ind.App., 564 N.E.2d 560, 562, *trans. denied;* Ind.Trial Rule 56(C). In reviewing the propriety of a ruling on a motion for summary judgment, we apply the same standard as the trial court. *Id.* All the evidence designated to the trial court is viewed in the light most favorable to the nonmovant. *Id.* When the parties do not dispute the facts material to the claim, our task is to determine whether the trial court correctly applied the law to the undisputed facts. *State ex rel. Ind. State Bd. of Dental Examiners v. Judd* (1990), Ind.App., 554 N.E.2d 829, 830. This court will affirm a summary judgment based upon any legal theory which is consistent with the facts disclosed in the record. *Hupp v. Hill* (1991), Ind.App., 576 N.E.2d 1320, 1323.

## II. Admissibility of Evidence

█ Initially, we note that the facts of the present case are undisputed. Hence, Peele contends that the trial court improperly granted partial summary judgment in favor of Gillespie in that it erroneously applied the law to the undisputed facts. Specifically, Peele argues that if judgment is ultimately entered against him and he is not entitled to a $100,000.00 set-off from that judgment, Gillespie will receive a double recovery which, he alleges, is contrary to the general rule prohibiting double recovery as well as the Collateral Source Evidence Act [2] (Act).

Peele is correct that the general rule in Indiana is that a double recovery is not permitted. *See Scott v. Krueger* (1972), 151 Ind.App. 479, 280 N.E.2d 336, 358. This rule has been recognized by our legislature and incorporated into the Act. Specifically, our legislature sought to avoid the possibility of double recovery by setting forth circumstances in which certain collateral source payments may be admitted into evidence in order that the trier of fact is made aware that the plaintiff has already received some payment for his loss. *See* I.C. § 34–4–36–1(2) (one of the enumerated purposes of the Act is to ensure that a prevailing party does not recover more than once from all applica-

ble sources for each item of loss sustained). The Act provides in pertinent part:

> In a personal injury or wrongful death action the court shall allow the admission into evidence of:
>
> (1) proof of collateral source payments, other than:
>
> > (B) insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly.

I.C. § 34–4–36–2. Therefore, while the majority of collateral source payments are admissible to prevent double recovery, certain payments are to be excluded.

Peele argues that underinsured motorist benefits paid to an injured party do not fall into one of the categories of collateral source payments that are inadmissible under the Act. Specifically, Peele posits that underinsured motorist benefits are excluded from the broad category of inadmissible insurance benefits referred to in I.C. § 34–4–36–2(1)(B). Peele recognizes that this court has held that:

> ... the collateral source rule in Indiana states compensation for the loss received by plaintiff from a collateral source, independent of the wrongdoer, *as from insurance,* cannot be set up by the wrongdoer in mitigation of damages. (citations omitted). Evidence of benefits from a collateral source tends to prejudice the jury and influence its verdict not only as to damages but also as to its liability. (emphasis added).

*Aldridge v. Abram & Hawkins Excavating Co.* (1985), Ind.App., 474 N.E.2d 107, 108, *trans. denied.* Nevertheless, Peele asserts that only collateral source payments that are wholly independent of the tortfeasor should be excluded from evidence under the collateral source rule. Peele's argument continues that underinsured motorist benefits are not wholly independent from the tortfeasor because they are inescapably tied to the legal liability of the underinsured motorist in that such benefits are not payable unless the insured is legally entitled to recover damages from the tortfeasor. We decline Peele's re-

2. IND.CODE §§ 34–4–36–1 to 3.

quest to find an exception to I.C. § 34–4–36–2(1)(B).

We will not interpret a statute which is clear and unambiguous on its face. *See Indiana St. Bd. of Health v. Journal-Gazette Co.* (1993), Ind.App., 608 N.E.2d 989, 992. We must examine and treat it as a whole, giving the statute its apparent and obvious meaning. *Id.* In construing a statute, our foremost duty is to determine and give effect to the true intent of the legislature. *Cook v. Humana Health Care Plan, Inc.* (1994), Ind.App., 636 N.E.2d 166, 168. We presume words appearing in the statute were intended to have meaning, *Evansville v. Int'l Assoc. of Fire Fighters, Local 357* (1987), Ind., 516 N.E.2d 57, 59, and we endeavor to give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Park 100 Dev. Co. v. Indiana Dep't of Revenue* (1981), Ind., 429 N.E.2d 220, 222–23. Further, it is just as important to recognize what a statute does not say as it is to recognize what it does say. *Van Orman v. State* (1981), Ind.App., 416 N.E.2d 1301, 1305. We may not read into the statute that which is not the expressed intent of the legislature. *St. Anthony Medical Center, Inc. v. Smith* (1992), Ind.App., 592 N.E.2d 732, 739, *trans. denied.*

The Act clearly states that collateral source payments in the nature of insurance benefits for which the plaintiff or a member of his family have paid for directly are not admissible as evidence. I.C. § 34–4–36–2(1)(B). The plain language of the statute includes all types of insurance benefits. Had the legislature intended to exclude underinsured motorist benefits paid to an insured by his own insurer from the broad category of insurance benefits, thus rendering such evidence admissible, it could have done so. We refuse to read such an exception into the Act. Thus, contrary to Peele's assertion, we hold that the underinsured motorist payments received by Gillespie are collateral source benefits which fall under the purview of I.C. § 34–4–36–2(1)(B) and thus, may not be admitted into evidence at trial.

*III. Set-off*

Having determined that evidence that a plaintiff has received underinsured motorist benefits from his insurer is not admissible, we must now determine whether a defendant is entitled to a set-off in the amount of the benefits received by the plaintiff. Peele argues that he is entitled to a set-off because to hold otherwise would award the plaintiff a double recovery. We disagree.

In general, double recovery does not occur because insurers have a right to subrogation. Indiana's Underinsured Motorists Coverage Statute[3] contains a subrogation clause through which our legislature has given insurers the authority to contractually provide themselves with subrogation rights. I.C. § 27–7–5–6(a). The statute provides that:

[t]he insurer shall be subrogated, to the extent of such payment, to the proceeds of any settlement or judgment that may later result from the exercise of any rights of recovery of such person against any person or organization legally responsible for said bodily injury or death, or property damage for which payment is made by the insurer.

I.C. § 27–7–5–6(a). As a result, most insurance policies contain subrogation clauses which provide that once an insured receives payment from the tortfeasor, the insurer has a right to reimbursement for the amount of benefits it previously paid to its insured. Thus, because insurers have the right to subrogation, insureds who receive benefits from their insurer as well as damages from the underinsured motorist do not end up with a double recovery.

Although we recognize that in some instances, such as the present case, the insurer may forego or lose its right to subrogation, we do not find that these unique situations compel a different holding. From a policy standpoint, if we were to disallow a plaintiff to keep the benefits rightfully paid to him by his insurer who no longer has a right to subrogation, we would be allowing the defendant to benefit from the fact that the plaintiff was prudent and paid for underinsured motorist coverage. Such a result has been disfavored by our supreme court. In *Cunningham, et al. v. Evansville & Terre Haute R.R.*

3. IND.CODE §§ 27–7–5–1 to 6.

*Co.* (1885), 102 Ind. 478, 484, 1 N.E. 800, 804, the court stated:

> Nor will proof of money paid to the injured party by an insurer or other third person, by reason of the loss or injury, be admissible to reduce damages in favor of the party by whose fault such injury was done. The payment of such moneys not being procured by the defendant, and they not having been either paid or received to satisfy in whole or in part his liability, he can derive no advantage therefrom in mitigation of damages for which he is liable. As has been said by another, to permit a reduction of damages on such a ground would be to allow the wrong-doer to pay nothing, and take all the benefit of a policy of insurance without paying the premium. (citation omitted).

Thus, in the present case, Peele is not entitled to benefit from Gillespie's prudence in obtaining insurance coverage or from Prudential's failure to abide by its policy provisions and statutory law. Instead, we find it proper for the benefit to inure to Gillespie.

Therefore, we conclude that pursuant to the Act, evidence showing that Gillespie received underinsured motorists benefits in the amount of $100,000.00 from Prudential is not admissible at trial and Peele is not entitled to a $100,000.00 set-off from any judgment ultimately entered against him. Accordingly, we find that, as a matter of law, the trial court properly denied Peele's motion for partial summary judgment and granted Gillespie's motion.

### IV. *Designation of Evidence*

 Peele also contends that the trial court erred in granting Gillespie's motion for partial summary judgment because Gillespie failed to specifically designate, pursuant to Ind.Trial Rule 56(c), facts or evidence showing that there were no genuine issues of material fact and that he was entitled to judgment as a matter of law. We disagree. Although Gillespie only designated his affidavit in support of his motion for partial summary judgment, Peele also filed a motion for partial summary judgment along with a designation of facts and evidence. R. at 31–39. Both parties' motions raised the same issue

regarding whether Peele was entitled to a set-off. As a result, all of the evidence designated by each party was properly before the court. Thus, we find that based upon the evidence designated by both Gillespie and Peele, the trial court properly determined that no genuine issues of material fact existed and that Gillespie was entitled to judgment as a matter of law.

Judgment affirmed.

STATON and KIRSCH, JJ., concur.