**SOUTH NEWTON SCHOOL CORPORATION BOARD OF SCHOOL TRUSTEES, Appellant–Defendant,**

v.

**SOUTH NEWTON CLASSROOM TEACHERS ASSOCIATION, et al., Appellees–Plaintiffs.**

No. 49A02–0101–CV–4.

Court of Appeals of Indiana.

Aug. 29, 2001.

Publication Ordered Oct. 4, 2001.

Transfer Denied Feb. 15, 2002.

D. Michael Wallman, Rund & Wunsch, Indianapolis, IN, Attorney for Appellant.

Lisa F. Tanselle, Indianapolis, IN, Attorney for Amicus Curiae, Indiana School Boards Association.

Richard J. Darko, Eric M. Hylton, Lowe Gray Steele & Darko, LLP, Indianapolis, IN, Attorneys for Appellees.

## OPINION

KIRSCH, Judge.

South Newton School Corporation Board of School Trustees ("School Board") appeals the trial court's decision reversing the finding of the Indiana Education Em-

ployment Relations Board ("IEERB") that the School Board did not engage in an unfair labor practice when, without bargaining, it required the teachers, represented by the South Newton Classroom Teachers Association ("Association"), to perform two days of non-instructional work following the waiver of two instructional days in the 1998–1999 school year. The School Board contends that the trial court used the wrong standard when reviewing the IEERB's decision and therefore erroneously determined that the School Board committed an unfair labor practice by refusing to bargain.

We affirm.

## FACTS AND PROCEDURAL HISTORY

IC 20–10.1–2–1(c) requires public schools to provide 180 days of instruction to their students each year. Accordingly, when inclement weather forces schools to close and cancel classes for the day, if that day causes the school corporation to fall below 180 instructional days, the day must be made up or the school corporation risks losing state funding. IC 20–10.1–2–1(d). Under some extraordinary circumstances, a school corporation may apply for and receive a waiver of missed student instructional days. IC 20–10.1–2–1(e). If the waiver is granted, the school corporation will not lose state funding as a result of providing fewer than 180 instructional days. *Id.*

The Association is the collective bargaining unit representing public school teachers employed by the South Newton School Corporation ("School Corporation"). Under the collective bargaining agreement and individual teacher contracts for the 1998–1999 school year, teachers were required to work 185 days. The contracts did not distinguish between instructional and non-instructional days, but the school

calendar provided for 180 instructional days and five non-instructional days.

During the 1998–1999 school year, school administrators cancelled eight student instructional days because of hazardous weather. Although class was not held, the teachers were paid for these eight days. Because IC 20–10.1–2–1(c) requires public schools to provide 180 days of instruction to their students, school administrators scheduled make-up days for six of the missed days to bring the total to 178 instructional days. The School Corporation applied for and received a waiver of the remaining two days from the Indiana Department of Education (IDOE), and students were therefore not required to make up those days.

The School Board, however, determined that the School Corporation teachers should be required to work the two days that were waived for the students. Thus, the School Board decided that teachers should fulfill the two-day requirement during the summer following the students' school year by attending professional development activities for two days. The superintendent compiled a list of approved activities and also allowed individual teachers to plan their own activity, subject to the School Board's approval. Although this arrangement was fully discussed by the Association and the School Board, it was not bargained.

The Association filed a claim of unfair labor practices against the School Board with the IEERB, alleging that the issue of the two professional development days and the length of those days should have been collectively bargained. After a hearing, the IEERB issued a decision and final order determining that the School Board had not committed an unfair practice. The Association appealed this decision to the trial court, which reversed the IEERB and found that the School Board had com-

mitted an unfair practice in its treatment of the two days. The School Board now appeals.[1]

### DISCUSSION AND DECISION

██ The School Board argues that the trial court's decision that it committed an unfair labor practice is erroneous and contrary to law. Appeals from the IEERB's decision are governed by the Administrative Orders and Procedures Act. *See Clendening v. Indiana Family & Soc. Servs. Admin.,* 715 N.E.2d 903 (Ind.Ct.App.1999); *Eastbrook Cmty. Schs. Corp. v. Indiana Educ. Employment Relations Bd.,* 446 N.E.2d 1007, 1010 (Ind.Ct.App.1983). Under the Act, a court may grant relief from an administrative determination if the determination is: arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; contrary to a constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority or limitations, or short of a statutory right; without observance of procedure required by law; or unsupported by substantial evidence. IC 4–21.5–5–14; *Rynerson v. City of Franklin,* 669 N.E.2d 964, 971 (Ind.1996).

 The School Board alleges that the trial court used the wrong standard in reviewing the IEERB's decision. Specifically, the School Board alleges that as the agency entrusted to settle disputes between public school teachers and their employers, the IEERB should be afforded due deference to its expertise and thus to its decisions. This court stands in the position of the trial court in reviewing administrative actions. *State, Family & Soc. Servs. Admin. v. Thrush,* 690 N.E.2d 769, 773 (Ind.Ct.App.1998), *trans. denied.* We neither reweigh the evidence nor substi-

tute our judgment on factual matters for that of the agency. *Id.* We must accept the facts as found by the administrative body. *Partlow v. Indiana Family & Soc. Servs. Admin.,* 717 N.E.2d 1212, 1214 (Ind. Ct.App.1999). " 'An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself.' " *Weiss v. Indiana Family & Soc. Servs. Admin., Div. of Disability, Aging & Rehabilitative Servs.,* 741 N.E.2d 398, 406 (Ind.Ct.App.2000), *trans. denied* (2001) (quoting *LTV Steel Co. v. Griffin,* 730 N.E.2d 1251, 1257 (Ind.2000) (citations omitted)). If an agency misconstrues a statute, there is no reasonable basis for the agency's ultimate action. *Noland v. Indiana Family & Soc. Servs. Admin., Div. of Disability, Aging & Rehabilitative Servs.,* 743 N.E.2d 1200, 1203 (Ind.Ct.App.2001), *clarified on reh'g on other grounds* 750 N.E.2d 401 (Ind.Ct.App. 2001). Therefore, the trial court is required to reverse the agency's action as being arbitrary and capricious. *Id.*

Here, the parties do not dispute the salient facts. Rather, at issue is solely the IEERB's interpretation of the law. Because the IEERB's conclusions of law are entitled to no deference and we stand in the shoes of the trial court on appellate review of administrative decisions, whether the trial court used the wrong standard of review is of no consequence. Rather, we make our own independent determination of whether the IEERB's decision was contrary to law.

██ Under IC 20–7.5–1–4, public school corporations are obligated to collectively bargain with teachers on issues related to

---

1. We hereby deny the School Board's request for oral argument, finding the parties' argu- ments sufficiently well-developed in the briefs.

salary, wages, hours, and salary and wage related fringe benefits. Other issues, such as working conditions, are subject to an obligation to discuss. IC 20–7.5–1–5. In this case, the School Board and the Association fully discussed the professional development days, but did not bargain them. The School Board argues that it had no obligation to do so, because the professional development days did not relate to wages or hours because the teachers were already contractually obligated to work those days under their 1998–1999 contracts. The School Board notes that its contract with the Association requires the teachers to work 185 days. Under the original calendar, teachers would have worked 180 student instructional days, as mandated by state law, and five teacher-only days. Because two days of student instruction were waived by the IDOE, the teachers taught only 178 days and had five teacher-only days. Accordingly, the School Board contends that the teachers are contractually obligated to work an additional two days. The School Board maintains that the waiver of student instructional days by the IDOE has no bearing on this dispute, but rather, relates only to funding and accreditation. Instead, the School Board asserts that its actions amounted only to the rescheduling of days the teachers were already obligated to work, which is not bargainable.

The Association's argument, on the other hand, begins with IC 20–6.1–5–9 ("School Closing statute"), which provides that teachers must be paid when school is closed by order of the school corporation or health authorities, but that "whenever a cancelled student instructional day ... *is rescheduled* to comply with [the 180 day minimum] ... each teacher ... shall work on that rescheduled day without additional compensation." (Emphasis added.) The Association argues that because the statute specifies only rescheduled student in-

structional days, it does not include non-rescheduled, i.e., waived student instructional days. Accordingly, the Association asserts that the statute impliedly addresses the issue of waived days and does not require teachers to work with no additional compensation on those days. The Association then reasons that its members taught 178 days, worked five teacher-only days and by virtue of the School Closing statute, were entitled to compensation for the two non-rescheduled days. Thus, it argues that the School Board unilaterally obligated the teachers to work two additional days when it required the teachers to work the two professional development days. The Association contends that the addition of these two work days is bargainable.

The resolution of this case turns upon the proper interpretation of the School Closing statute. This court's goal in statutory construction is " 'to determine and effect statutory intent.' " *Consolidation Coal Co. v. Indiana Dep't of State Revenue*, 583 N.E.2d 1199, 1201 (Ind.1991) (quoting *Spaulding v. Int'l Bakers Serv., Inc.*, 550 N.E.2d 307, 309 (Ind.1990)). This court endeavors to give statutory words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Peele v. Gillespie*, 658 N.E.2d 954, 958 (Ind.Ct.App.1995), *trans. denied* (1996). Where the General Assembly has defined a word, this court is bound by that definition, even though it conflicts with the common meaning of the word. *Consolidation Coal*, 583 N.E.2d at 1201. Where the General Assembly has used a word without definition, however, this court must examine the statute as a whole and attribute the common and ordinary meaning to the undefined word, unless doing so would deprive the statute of its purpose or effect. *Id.* Further, it is just as important to recognize what a statute does not say as it

is to recognize what it does say. *Peele,* 658 N.E.2d at 958. A court may not read into a statute that which is not the expressed intent of the legislature. *Perry–Worth Concerned Citizens v. Bd. of Comm'rs of Boone County,* 723 N.E.2d 457, 459 (Ind.Ct.App.2000), *trans. denied; Peele,* 658 N.E.2d at 958; *United Farm Bureau Mut. Ins. Co. v. Steele,* 622 N.E.2d 557, 561 (Ind.Ct.App.1993). That is, courts will not add something to a statute that the legislature has purposely omitted. *Town of Schererville v. Vavrus,* 180 Ind. App. 500, 389 N.E.2d 346 (1979).

The School Closing statute specifically requires teachers to work for no additional pay on *rescheduled* student instructional days. By its own explicit terms, the statute excludes non-rescheduled student instructional days, such as those at issue here. By virtue of this exclusion from the no additional compensation mandate, non-rescheduled student instructional days need not be made up by teachers for no additional compensation.

Nonetheless, the School Board points to cases decided by this court that it claims are dispositive of this issue. In *Eastbrook Comm. Sch. Corp.,* 446 N.E.2d at 1007, a case that arose prior to the 1987 amendment to the School Closing statute that requires teachers to work on rescheduled student instructional days for no additional compensation, teachers, who were paid for cancelled instructional days, argued that they were entitled to additional compensation when these days were rescheduled. This court determined that the interests of the school board and the teachers are subordinate to the right of children to a thorough education. We held that setting the school calendar was a matter of educational policy where the teachers' contracts required the teachers to render services on days other than those originally scheduled when such was necessitated by bad weath-

er. *Id. See also Halley v. Bd. of Sch. Trs. of the Blackford County Sch. Corp.,* 531 N.E.2d 1182 (Ind.Ct.App.1988) (1987 amendment of the School Closing statute requiring teachers to work such days without additional compensation only clarified legislative intent, and that the teachers were not entitled to receive additional compensation); *Union County Sch. Corp. Bd. of Sch. Trs. v. Indiana Educ. Employment Relations Bd.,* 471 N.E.2d 1191 (Ind. Ct.App.1984), *trans. denied* (1985) (holding, pre-amendment, "make-up days which do not change the amount of time the teachers agreed to teach [do] not have such a direct and substantial impact upon salary, wages, hours and salary and wage related benefits as to mandate bargaining").

Here, the IEERB relied on the student and community interests identified in *Eastbrook* in determining that the School Board had no obligation to bargain. However, while students and the community are undoubtedly benefited by having better-trained teachers, the interest is less compelling than the interests of students and the community in a specified number of instructional days. Further, all of the cases cited by the School Board relied on law that predated the 1987 amendment to the School Closing statute at issue here. Most importantly, in each of these cases, the student instructional days were actually rescheduled. This is precisely the situation addressed by the statute. Nothing in any of these cases addresses the issue of compensation for non-rescheduled student instructional days. Thus, these cases are not dispositive.

We hold that the School Closing statute does not obligate teachers to work non-rescheduled student instructional days without additional compensation. Accordingly, the School Board committed an unfair labor practice by requiring the teach-

ers to make-up the two non-rescheduled student instructional days by the addition of two professional development days.

Affirmed.

BAILEY and BROOK, JJ., concur.

## ORDER

This court having heretofore handed down its decision in this appeal on August 29, 2001 marked Memorandum Decision, Not for Publication;

Comes now the appellee, by counsel, and files herein its motion to publish Court of Appeals opinion, alleging therein that said decision should be published because it establishes, modifies, or clarifies a rule of law and involves a legal or factual issue of unique interest or substantial public importance, namely, that I.C. 20–6.1–5–9 (School Closing Statute) school corporations can not require teachers to work non-scheduled student instructional days that had previously been waived by the state without bargaining, which said motion is more particularly in the following words and figures, to wit:

And the court, having examined said motion and being duly advised, now finds that the same should be granted and that this court's opinion heretofore handed down in this cause on August 29, 2001 marked Memorandum Decision, Not for Publication, should now be ordered published.