**CITY OF CROWN POINT,**
**Appellant–Defendant,**

v.

**MISTY WOODS PROPERTIES,**
**LLC, Appellee–Plaintiff.**

No. 45A03–0511–CV–560.

Court of Appeals of Indiana.

April 18, 2007.

Matthew L. Hinkle, Elizabeth I. Van Tassel, Coots, Henke & Wheeler, P.C., Carmel, IN, Attorneys for Appellant.

Michael L. Muenich, Michael L. Muenich, P.C., Highland, IN, Attorney for Appellee.

Robert W. Eherenman, Haller & Colvin, P.C., Attorney for Amici Curiae: Indiana Association of Cities and Towns and Indiana Municipal Lawyers Association.

## OPINION

ROBB, Judge.

*Case Summary and Issues*

Misty Woods Properties, LLC ("Misty Woods") filed a Rezoning Petition requesting that certain parcels of land in Crown Point, Indiana (the "City"), be rezoned from agricultural ("A–1") to residential ("R–1" and "R–2"). After a public hearing, the Crown Point Plan Commission sent an advisory recommendation of the Rezoning Petition to the Crown Point Common Council. The Council approved an amended ordinance rezoning all the real estate to R–1. Misty Woods thereafter filed an application for a variance with the Crown Point Board of Zoning Appeals ("BZA") seeking a reduction in the required lot frontage and area for subdivided parcels of the land. The BZA voted to deny the variance. Misty Woods then filed a complaint against the City because of its decisions in these matters. Both parties filed motions for summary judgment, and after a hearing, the trial court granted

Misty Woods' motion for partial summary judgment, finding that the amended ordinance allowing only the R–1 rezone was void and ordering that the proposed ordinance with both R–1 and R–2 rezoning take effect by operation of law. Moreover, the trial court denied the City's motion for summary judgment as to all counts. The City now appeals, raising several issues that we consolidate and restate as two: whether the trial court properly granted partial summary judgment to Misty Woods and whether the trial court properly denied the City's motion for summary judgment. Concluding that the trial court erred in denying the City's motion for summary judgment on all counts, we reverse.

### Facts and Procedural History

On November 21, 2003, Misty Woods filed a Rezoning Petition with the City seeking to rezone approximately 100 acres of property from A–1 to R–1 and R–2. The land was in four parcels, and Misty Woods sought to rezone Parcels I and II as 101 R–1 lots and Parcels III and IV as 56 R–2 lots. R–1 and R–2 have the same permitted uses; however, R–2 has special uses that include duplexes. Thus, Misty Woods wanted the R–2 rezone so it could apply for a special use and build duplexes on Parcels III and IV. The minutes from the Plan Commission meeting on December 8, 2003, at which Misty Woods' petition was considered, show that the following took place:

> Attorney James Wieser representing [Misty Woods' Petition], requesting rezoning A–1 to R–1 and R–2 at the above location.... [Commission member] Mrs. Retson stated there are too many duplexes being developed; however, has no problem with rezoning into R–1. Mr. Bremer conceded. Ms. Vellutini suggested to consider villas instead of duplexes. The petitioner advised there

will be restrictive covenants to require residences to be owner-occupied.

\* \* \*

> Mr. Wirtz motioned to recommend to the City Council to rezone [per Misty Woods' Petition]. Ms. Vellutini seconded the motion. Motion passed by a unanimous roll call vote; with the exception of a nay vote by Mr. Bremer and Mrs. Retson.

Appellant's Appendix at 26.

Misty Woods' Rezoning Petition, subsequently named Ordinance No. 2004–01–01, was submitted to the Council at its meeting on February 2, 2004. The Council meeting minutes indicate:

> ... Jim Wieser, Attorney for this project trying to address concerns regarding this project and what will be acceptable by the council.... Member Bremer voted against this at the Plan Commission and plans to vote against it again in regard to the duplex lots are not appropriate for that area.... Member Drasga agrees with Paul Bremer based on his report from the planning commission. Member Corbin is thinking in terms of the return on what is being invested in utilities in terms of property tax dollars generated. This meeting is to approve a zone change and not to approve a plan and how this land is being used for the community. Member Condron stated that the product that the developers want to introduce is high quality ... and would like more drafts done.... [City planner] stated the Kendra petition also proposing to do duplexes, which came with a recommendation for denial by the Plan Commission. Council shall take action within 90 days after Plan Commission recommendation. Member Condron suggested approving an R–1 at this council meeting. There was much discussion regarding this and Mr. Wieser is

willing to proceed in good faith and get some sense of what the council wants. Member Drasga would go with the R–1 rezoning however, does not want to give the impression at sometime in the future we will automatically approve an R–2.... Per [City planner,] the options would be to amend from A–1 Agricultural to R–1 zoning single family subdivision. After further discussion a motion was made to amend zone change from A–1 to R–1 only and hold over for second reading.... Motion carried unanimously by voice vote.

*Id.* at 28. After public notice, Ordinance 2004–01–01 as amended was considered by the Council at its meeting on March 1, 2004:

This was originally deferred to the meeting of February 2, 2004 and at that time a motion was made to amend so that it would be all R–1. Attorney James Wieser for [Misty Woods] advised that they would not appear at this meeting but upon approval move forward with the Plan Commission. Motion was made by Member Farley to approve seconded by Member Corbin. Motion carried unanimously by voice vote....

*Id.* at 30. The ordinance, as amended so that the entire property was rezoned from A–1 to R–1, is shown as "passed and adopted" on March 1, 2004, and was signed by the City's Mayor on that same day. *Id.* at 33.

On July 8, 2004, Misty Woods filed an Application for Variance with the BZA, showing that the property was zoned R–1, and requesting a variance from eighty-foot lot frontage to sixty-foot lot frontage for single family residences and a reduction in required lot area from 10,000 to 7,800 square feet. The BZA denied the variance.

On November 24, 2004, Misty Woods filed a complaint against the City, seeking a declaratory judgment that the ordinance as requested by Misty Woods—that is, with rezoning to both R–1 and R–2—be considered to have taken effect by operation of law because of the Council's failure to act on it within ninety days of the Plan Commission's recommendation on December 8, 2003; a declaratory judgment that the variance request be considered to have taken effect by operation of law because the BZA.can only make recommendations to the Council and cannot itself grant or deny variances; and alleging that the City violated due process in its handling of Misty Woods' rezoning petition and variance request. The City filed its answer and asserted several affirmative defenses. Misty Woods then filed a motion for summary judgment, seeking entry of judgment in its favor on its claim that the rezoning petition took effect by operation of law and also seeking partial summary judgment on its due process claim against the Council for its actions with regard to the rezoning petition. The City responded and also filed its own motion for summary judgment, seeking entry of judgment in its favor on all counts. After a hearing, the trial court entered .the following order:

Upon review of the memoranda, supporting documents and relevant case and statutory law, the Court now GRANTS Plaintiff's Motion for Partial Summary Judgment and DENIES Defendant's Counter Motion for Summary Judgment.

Plaintiff's Motion is granted because the Court finds that there is no genuine issue of material fact regarding Defendant's failure to act on Plaintiff's Rezoning Petition for more than ninety (90) days, thus Plaintiff is entitled to the remedy of constructive relief as provided by the legislature, i.e., their Ordinance takes effect as if it had been adopted as

certified. Therefore, the Amended Ordinance is void as a matter of law.

Further, the City's Counter Motion fails to meet its burden regarding its purported defenses of estoppel, waiver, immunity, or lack of the Tort Claim Notice as to the declaratory judgment action.

The Court feels any consideration of Plaintiff's 42 U.S.C. § 1983, or Due Process claims would be premature at this time as they only become relevant if the Amended Ordinance is not voided.

*Id.* at 14–15. The trial court, on Misty Woods' request, thereafter entered the following order directing entry of judgment:

The Court, having considered the request for entry of judgment under Indiana Trial Rule 54(B), hereby determines that there is no just reason for delay in the entry of judgment on Count I as determined by this Court's order ... and it is hereby directed that judgment be entered on Count I, as determined by such order. Counts II, III, and IV remain pending but further proceedings on these claims will be stayed pending the anticipated appeal of the judgment on Count I.

*Id.* at 16. The City then initiated this appeal.[1]

## Discussion and Decision[2]

### I. Summary Judgment Standard of Review

Our standard of review for a ruling on summary judgment is well-settled: summary judgment is appropriate "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C).

Upon appeal, we are bound by the same standard as the trial court. We consider only those facts which were designated to the trial court at the summary judgment stage. We do not reweigh the evidence, but instead liberally construe the designated evidentiary material in the light most favorable to the non-moving party to determine whether there is a genuine issue of material fact.

*St. Joseph County Police Dept. v. Shumaker,* 812 N.E.2d 1143, 1145 (Ind.Ct.App. 2004), *trans. denied.* "A genuine issue of material fact exists where facts concerning an issue which would dispose of the litiga-

---

1. The Indiana Association of Cities and Towns and the Indiana Municipal Lawyers Association sought and were granted permission to file an amici curiae brief aligned with the City.

2. Misty Woods has filed an Appellee's Appendix in this case. We direct Misty Woods' attention to Appellate Rule 50(A)(3), which provides that the "contents of the appellee's Appendix shall be governed by Section (A)(2) of this Rule, *except the appellee's Appendix shall not contain any materials already contained in appellant's Appendix.*" (Emphasis added.) Misty Woods has also argued that the City's Addendum to its brief, which consists of a certified copy of Sections 150.06 through 150.19 of the City of Crown Point, Indiana Code of Ordinances, cannot be considered on appeal because it is not part of the

record before the trial court. Appellate Rule 46(H) allows the filing of an Addendum to Brief that contains "a highly selective compilation of materials" such as "full text copies of statutes, rules, regulations, etc. that would be helpful to the Court on Appeal but which, for whatever reason, cannot be conveniently or fully reproduced in the body of the brief." Evidence Rule 201(b) allows a court to take judicial notice of law, which is defined to include "codified ordinances of municipalities." A court may take judicial notice at any stage of the proceedings, including on appeal. Ind. Evidence Rule 201(f); *see Mayo v. State,* 681 N.E.2d 689, 693 (Ind.1997). Misty Woods does not dispute the accuracy of the ordinance sections provided by the City, and we therefore deny Misty Woods' motion to strike.

tion are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue." *Ross v. Indiana State Bd. of Nursing*, 790 N.E.2d 110, 115 (Ind.Ct.App.2003). A trial court's grant of summary judgment is clothed with a presumption of validity, and the appellant bears the burden of demonstrating that the trial court erred. *Carter v. Indianapolis Power & Light Co.*, 837 N.E.2d 509, 514 (Ind.Ct.App.2005), *trans. denied.* If the trial court's ruling can be sustained on any theory or basis supported by the record, we must affirm. *Id.*

The fact that the parties made cross-motions for summary judgment does not alter our standard of review. *Pond v. McNellis*, 845 N.E.2d 1043, 1053 (Ind.Ct. App.2006), *trans. denied.* Instead, we must consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. *Id.*

## II. Council's Rezoning Decision

### A. Statutory Framework

Indiana Code sections 36–7–4–600 through 612 ("the 600 series") apply to initial enactment of or amendments to a zoning ordinance. An amendment to a zoning ordinance is initiated by filing a petition, which is referred to the plan commission. Ind.Code §§ 36–7–4–607, –608. The plan commission must give notice and hold a hearing pursuant to Indiana Code section 36–7–4–604. The plan commission must then certify the proposed amendment to the legislative body. Ind.Code § 36–7–4–605(a).

In this case, the parties agree that the amendment was to the zone maps, and therefore section 36–7–4–608 is the applicable provision for legislative action. For an amendment to zone maps, the plan commission can certify the proposal with a favorable recommendation, an unfavorable recommendation, or no recommendation. Ind.Code § 36–7–4–605(a)(3). The legislative body's course of action depends on the recommendation from the plan commission. When, as in this case, the plan commission certifies the proposed amendment with a favorable recommendation, the legislative body "may *adopt or reject* the proposal." Ind.Code § 36–7–4–608(f)(1) (emphasis added). "If the legislative body *adopts (as certified)* the proposal, it takes effect as other ordinances of the legislative body." Ind.Code § 36–7–4–608(f)(2) (emphasis added). If the legislative body rejects the proposal, it is defeated. Ind. Code § 36–7–4–608(f)(3). If the legislative body fails to act on the proposal within ninety days of its certification, "the ordinance takes effect as if it had been *adopted (as certified)* ...." Ind.Code § 36–7–4–608(f)(4) (emphasis added).

### B. Declaratory Judgment Count

Count I of Misty Woods' complaint sought a declaratory judgment that the Council failed to act on its rezoning petition when the Council did not either adopt or deny the request as made and certified by the Plan Commission and that therefore, the rezoning petition was adopted by operation of law.

Rezoning is a legislative process, and the determination whether to rezone a particular piece of property is a matter left to the sound discretion of the local legislative body. *Bryant v. County Council of Lake County*, 720 N.E.2d 1, 5 (Ind.Ct.App. 1999), *trans. denied.* Appellate review of a rezoning decision is accordingly limited to constitutionality, procedural soundness, and whether the decision was arbitrary or capricious. *Borsuk v. Town of St. John*, 820 N.E.2d 118, 122 (Ind.2005). A rezoning decision is arbitrary and capricious if the legislative body has taken willful and unreasonable action without consideration and in disregard of the facts or circum-

stances of the case. *Ogden v. Premier Props., USA, Inc.*, 755 N.E.2d 661, 670 (Ind.Ct.App.2001). We will not intervene in the local legislative process as long as it is supported by some rational basis. *Bryant,* 720 N.E.2d at 5.

■■ Here, Misty Woods' rezoning petition received the required hearing by the Plan Commission. The Plan Commission certified the proposed amendment to the Council with a favorable recommendation. The initial point of contention here is whether the Council had the statutory power to amend that proposal and adopt something other than what was certified to it by the Plan Commission. The City contends it has that power; Misty Woods contends it does not.

Section 608, as detailed above, contemplates only three possible legislative actions: adoption of the ordinance as certified, rejection of the ordinance *in toto,* or failure to act on the ordinance. Ind.Code § 36–7–4–608(f). This is in contrast to sections 606 (adoption of an initial or replacement zoning ordinance) and 607 (amendment to or partial repeal of the text of a zoning ordinance), which each provide that after the plan commission certifies a proposal, the legislative body can "adopt, reject, *or amend* the proposal." Ind.Code §§ 36–7–4–606(b)(1), 36–7–4–607(e)(1) (emphasis added). Moreover, sections 606 and 607 both provide that if the legislative body amends the proposal, it shall be returned to the plan commission for consideration. Ind.Code §§ 36–7–4–606(g), 36–7–4–607(e)(4)(B).

■■ The primary rule of statutory construction is to determine and give effect to the intent of the legislature. *Nivens v. State,* 832 N.E.2d 1134, 1137 (Ind. Ct.App.2005). The best evidence of legislative intent is the language of the statute itself. *Id.* It is just as important to recognize what a statute does not say as it is to recognize what it does say. *S. Newton Sch. Corp. Bd. of Sch. Trs. v. S. Newton Classroom Teachers Ass'n,* 762 N.E.2d 115, 119–20 (Ind.Ct.App.2001), *trans. denied.* Courts may not read into a statute that which is not the expressed intent of the legislature. *Id.* at 120. In other words, courts will not add something to a statute that the legislature has purposely omitted. *Id.; see Andrianova v. Indiana Family and Soc. Servs. Admin.,* 799 N.E.2d 5, 16 (Ind.Ct.App.2003) ("When language is used in one section of a statute but omitted from others, courts indulge a general presumption that Congress acted intentionally and purposely in so doing.") (citing *INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)).

Provisions for amendment of a proposal are included in sections 606 and 607, but are omitted in section 608. Further, section 608 includes the phrase "adopts (as certified)" in reference to the legislative body's powers. Considering the 600 series as a whole, we must conclude that the legislature intended that the local legislative body have no power to unilaterally amend a recommended proposal to change a zone map. The legislative body must either adopt the proposal as certified in its entirety or reject it in its entirety.[3] Here, the Plan Commission certified a proposal

---

**3.** The City cites the Home Rule Act as further authority for its action. The Home Rule Act grants a unit all powers granted by statute and "all other powers necessary or desirable in the conduct of its affairs, even though not granted by statute." Ind.Code § 36–1–3–4(b). However, a unit may only exercise any power it has to the extent that the power is not expressly denied by the Indiana Constitution or by statute. Ind.Code § 36–1–3–5(a). We have concluded that the legislature denied the legislative body the power to amend a proposal to change the zone maps inasmuch as it expressly granted the power to amend an initial or replacement zoning ordinance or the text of a zoning ordinance but not the zone

to rezone the subject land from A–1 to R–1 and R–2. The Council voted to enact an amended version of the certified proposal so that the land was rezoned R–1 only. Misty Woods contends, and the trial court found, that because the Council neither adopted the proposed ordinance as certified nor rejected it, the Council's action constituted a failure to act and the Plan Commission's recommendation became law after ninety days.[4] *See Evansville v. Fehrenbacher,* 517 N.E.2d 111, 114 (Ind.Ct. App.1987) (holding that when eight of the nine council members were present to vote on a proposed ordinance and the vote was a tie, the council neither adopted the ordinance nor rejected it because statute requires a majority vote; therefore, the council failed to act and the ordinance became law when the council did not remedy its failure to act within ninety days).

■■■ The City contends, however, that Misty Woods waived its right to have the

proposal adopted or rejected as certified.[5] At the February 2 meeting, several members of the Council expressed reservations about the R–2 request because an R–2 rezone would allow the possibility of duplexes. The following discussion occurred regarding the proposed ordinance:

> Councilman Condron: If we rezone this R–1 you could begin. If you think the developer or the people developing this could handle it if should it go all R–1, or would they even be not interested should it go R–1, if they could not attain anything other than R–1.

> [Misty Woods' Attorney] Mr. Wieser: To be quite candid, I'm not sure I can answer that. . . . I certainly think, and I would expect, that they would be—that the developer would be more willing to work in that regard than to face the prospect of having this matter denied. I don't know, you probably have some

---

maps. Therefore, we do not believe the Home Rule Act authorizes the City's action.

4. Although we decide this case on different grounds, we cannot agree with the trial court's position that the Council failed to act. "A legislative body may take action under section . . . 608 of this chapter only by a vote of at least a majority of all the elected members of the body." Ind.Code § 36–7–4–609(a). Unlike the tie vote in *Fehrenbacher* which was considered a failure to act, there was a majority vote here. Because the majority clearly indicated its intention *not* to adopt Misty Woods' petition as submitted, if anything, the vote should have been considered a rejection of the proposal.

5. Misty Woods in turn contends that the City has waived the affirmative defense of waiver by failing to include it as an affirmative defense in its answer. The City raised several affirmative defenses, including estoppel. Waiver is defined as an affirmative defense by Trial Rule 8(C). However, it is not one of the affirmative defenses that is waived if not made either by motion or in a responsive pleading pursuant to Trial Rule 12. As Trial Rule 8(F) provides that "[a]ll pleadings shall

be construed as to do substantial justice, lead to disposition on the merits, and avoid litigation of procedural points," and as the essential facts for proof of estoppel and waiver are the same in the case, and as the City raised waiver in the summary judgment proceedings, the issue of waiver was before the trial court and therefore, also before us. *See Piskorowski v. Shell Oil Co.,* 403 N.E.2d 838, 847 (Ind.Ct.App.1980) (holding that appellant had waived affirmative defense of illegality by failing to assert it in his pleadings and to avail himself of the opportunity to raise the issue on summary judgment; the latter "avenue was open to [appellant] by virtue of the fact that the parties had not yet submitted the cause to a pre-trial conference and order, the final step in the process of issue formulation."); *Schafer v. Buckeye Union Ins. Co.,* 178 Ind.App. 70, 381 N.E.2d 519, 521 (1978) (noting that the opponent of summary judgment may raise matters which provide an actual defense if the pleadings and discovery disclose a genuine issue with respect to an affirmative defense, "then the court was required to consider those issues. . . .").

rule. Curt, you probably have some rule there that prevents you from coming back in a certain period of time?

[City Planner] Mr. Graves: One year for the same petition.

Mr. Wieser: Right. And we could modify the petition.... But I mean, again, I think you've demonstrated a willingness to work with us and we've demonstrated a willingness to work with you, and I would imagine that we could try to work with something like that, and then obviously we'd come back and we do have some options regarding the patio homes and variances or requests for a rezone ultimately.

\* \* \*

[City Attorney] Mr. Wolter: What you could do is move to amend this and say that you would have it read, I hereby change A–1 agricultural to R–1 residential for, just to make it clear, all of the above-described properties. Then that essentially puts it in a situation where you're passing an ordinance changing the zoning from A–1 to R–1.

What I can say to you is, there has not ever been a first read on this. It was just deferred at the last council meeting. So you have the option of doing a first read tonight. You can have it on your agenda for your council meeting on March 1st.... And I don't know if Mr. Wieser and his clients wanted to come in with something else, but at least you're moving forward and you're showing your intention to work with these people, certainly.

Councilman Condron: [Misty Woods' Engineer] Suheil [Nammari], Mr. Wieser, would you like to proceed that way?

Mr. Nammari: Well, obviously we would have liked to have had this kind of resolved tonight. But I think in good faith, we are willing to proceed in good faith.

\* \* \*

Councilwoman Drasga: And my question is, when we're talking here on good faith, I think the only thing I can say tonight is that I would go ahead with an R–1 zoning. Good faith, I would not want to at all give the impression or the expectation that when this comes back at some point in time in the future we will automatically look at an R–2 or approve an R–2. So when you're saying "good faith", what are we talking about?
. . .

Mr. Nammari: I'm going based on what Mr. Condron had indicated earlier. He said to go ahead with R–1 and then come back to us to discuss the changing a portion of the R–1 to R–2. That's what I'm going based on.

\* \* \*

Mayor Klein: Let me ask Curt, what are the options from your standpoint? If it goes R–1, if there's a motion made tonight to amend to just strictly R–1, they still go back to the plan commission?

Mr. Graves: No. This council tonight can do an amendment Rich talked about briefly. You can amend, strike off a little comment on the ordinance itself, act on an ordinance just to rezone from A–1 ag strictly to R–1 zoning. They have our permission to then move forward with R–1 single-family subdivision....

\* \* \*

Councilman Condron: And explain the procedure should they—should they build along here and things are going pretty well, and they want to build villas or duplexes. They would come back?

Mr. Graves: They have to go back to the rezoning process again to ask for a portion to be rezoned R–2. Or, they could choose to go before the BZA board for variance on lot frontages. Or they

could come in and ask for a planned unit development on a portion of the R–1 land. There would be three options available at a later date.

Mr. Wieser: It seems to try to bring all of this together, all the comments that I've heard ... If you were to take that action, then in essence what would happen is, we would be, maybe grudgingly, but we would be back to where we appropriately should be if there's going to be more planning, which is at the planning commission.... We wouldn't necessarily be jumping for joy if we were to go back there, but we understand what your concerns are. And it may be that going back to the plan commission armed with all this information, which I think is helpful, could lead us to an ultimate conclusion that we would all be happy with. And if you did the R–1, at least we would be moving in some direction.

\* \* \*

Mayor Klein: Mr. Wieser, you would be okay with it being amended to an R–1 tonight? You could live with that?

Mr. Wieser: Yeah, I don't want my client to pick up the minutes of the meeting and say that Jim Wieser said that was okay. Jim Wieser would live with the action of the council.

Mr. Nammari: I think we could do it because then something can go forward and then it comes back to the plan commission like you would like it to.

Appellant's App. at 166–80. The Council then moved to amend the proposed ordinance to an R–1 rezone only and held the ordinance over for second reading at the next regular Council meeting. Prior to the next meeting, Misty Woods, through its attorney, contacted the City's Attorney and advised that it did not plan to attend the meeting "so long as there would be no deviations from the A–1 to R–1 zone

change request before the council" and further advised that Misty Woods would move forward with the project. *Id.* at 186. The Council ostensibly passed the ordinance as amended. Several months later, Misty Woods applied to the BZA for a variance reducing the lot frontage and total area in order to develop duplexes on certain lots. The application for variance states the property is zoned as R–1. The BZA denied the variance. It was only after the BZA denied the variance that Misty Woods filed its complaint alleging the Council acted improperly in enacting the rezoning ordinance.[6]

 Waiver is the intentional relinquishment of a known right, requiring both knowledge of the existence of the right and intention to relinquish it. *Pohle v. Cheatham,* 724 N.E.2d 655, 659 (Ind.Ct. App.2000). Waiver may be shown by either express or implied consent, and the right may thus be lost by a course of conduct that estops its assertion. *Id.* However, waiver is an affirmative act and therefore, mere silence, acquiescence or inactivity does not generally constitute waiver. *Id.* The language of section 608 precludes the Council from unilaterally amending a proposal to change the zone maps as acted on by the Plan Commission. However, from the colloquy set forth above, it is apparent that if the Council's only options were to adopt or reject the proposal with both R–1 and R–2 zoning, it would likely have rejected the proposal. It is also apparent that Misty Woods' representatives at the hearing—Wieser, Misty Woods' counsel, and Nammari, Misty Woods' engineer—did not want the proposal to be rejected *in toto,* but wanted to keep the project moving forward. Misty Woods did not object when the Council voted to amend the ordinance to grant only R–1 zoning and hold it over for a second reading. Misty Woods' failure to

---

**6.** The denial of the variance is also at issue in this case and is discussed below.

object cannot be considered "mere silence, acquiescence or inactivity," however, because it engaged the Council on the subject of amending the proposal to something more agreeable to the Council. Moreover, Misty Woods affirmatively informed the Council prior to the March meeting that it would not be attending the meeting but would move forward following approval of the amended ordinance. Finally, Misty Woods acknowledged the R–1 rezone in its application to the BZA for a variance.

■ Although the Council did not have the statutory authority to amend the proposed ordinance to change zone maps on its own, Misty Woods certainly had the power to amend or withdraw its own request.[7] When the Council indicated that it would approve a zone change from A–1 to R–1 only, but not necessarily a zone change including R–1 *and* R–2, Misty Woods effectively amended its petition by telling the Council that R–1 was acceptable, both by its statements at the February meeting and its actions in not attending the March meeting. The change, although it clearly did have some repercussions for Misty Woods' future development, was not a substantial one. The zoning still changed from agricultural to residential, as Misty Woods requested. The permitted uses under the R–1 and R–2 zones are the same; it is the special uses that are different: R–2 allows two family dwellings as a special use whereas R–1 does not. The Council, as the legislative body with the ultimate authority to enact or reject a proposed ordinance, had

the authority to act on this amended ordinance without sending it back to the Plan Commission, which has a merely advisory role in the rezoning process. *See Ogden,* 755 N.E.2d at 668 (holding that a city council acted with a rational basis in passing a proposed ordinance which the developer supplemented with additional written covenants at the hearing before the council in order to address concerns of adjoining landowners and the council itself; council could have required formal amendment and further plan commission review, but did not have to). We conclude that there can be no factual dispute as to whether the Council had a rational basis for passing the ordinance as amended, and therefore, the trial court erred in granting partial summary judgment to Misty Woods and denying summary judgment to the City on this count.

### C. Due Process Count

■ Count III of Misty Woods' complaint alleged due process violations by the Council in acting as it did. We hold that the trial court erred in denying the City's motion for summary judgment with respect to this count. Proceedings before plan commissions and boards of zoning appeal are quasi-judicial and are entitled to due process protections; however, when a common council acts in a legislative capacity, it is not subject to due process requirements. *City of Hobart Common Council v. Behavioral Inst. of Indiana, LLC,* 785 N.E.2d 238, 246 (Ind.Ct.App. 2003). As stated above, zoning or rezoning is a legislative determination, not an

---

7. It is understandable that a petitioner would rather amend or even withdraw its request than let it be rejected. Section 608 provides that the plan commission "may adopt a rule to limit further consideration, for up to one (1) year after its defeat, of a proposal that is defeated under subsection (f)(3). . . ." Ind. Code § 36–7–4–608(h). According to the City Planner's comments at the February 2 meet-

ing, the City's Plan Commission has adopted such a rule. The rule applies, however, only if a proposed ordinance is rejected by the legislative body. By amending or withdrawing its petition before a vote, a petitioner could avoid a vote rejecting the proposed ordinance and thus, avoid the one year limitation on further consideration.

administrative or quasi-judicial determination based on fact-finding. *See id.* . In the legislative process, there is no constitutional due process requirement of a neutral decision maker; rather, the check on legislative power is the ballot box. *Perry–Worth Concerned Citizens v. Bd. of Comm'rs of Boone County,* 723 N.E.2d 457, 460 (Ind.Ct.App.2000), *trans.* *denied.* Even if the Council acted improperly with respect to Misty Woods' rezoning petition, the zoning statutes provide the remedy. Misty Woods cannot show a deprivation of due process as a matter of law and accordingly, the trial court erred in failing to grant the City's motion for summary judgment on Count III of Misty Woods' complaint.

## II. Board of Zoning Appeals Variance Decision

■ Count II of Misty Woods' complaint sought a declaratory judgment that its application for variance to the BZA should be considered approved by operation of law. Count IV of Misty Woods' complaint also alleged in the alternative a violation of its due process rights in the denial of the variance. The City sought summary judgment in its favor on these counts, but the trial court denied the City's motion.

Before the BZA, Misty Woods filed an application seeking a variance to be able to subdivide its land into lots of 7,800 square feet with sixty foot frontage. City ordinances required 10,000 square foot lots with eighty foot frontage in an R–1 zone. At a hearing on July 26, 2004, the BZA denied the application because "of Criteria # 1: It would be injurious to the public health, safety, morals and general welfare of the community; and Criteria # 3: The need for the special use arises from some condition peculiar to the property involved." Appellant's App. at 201. No further action was taken. Misty Woods' complaint alleges that pursuant to Indiana

Code section 36–7–4–918.6, the BZA had the power to make only a recommendation to the Council on the variance request and the Council then had ninety days to act on the recommendation or the variance request would be considered approved by operation of law.

The City contended on summary judgment that section 36–7–4–918.6 is not the appropriate statute; rather, the City asserted that section 36–7–4–918.5 governed Misty Woods' variance request. Although Misty Woods' complaint alleged that it applied for a use variance, the City claimed on summary judgment that "[i]t is undisputed that the variance requested by Misty Woods sought a change from the development standards of the [City] zoning ordinance." Appellant's App. at 121. Misty Woods wholly failed to respond to the City's argument on this issue in either its Response in Opposition to the City's Motion for Summary Judgment or in its Appellee's Brief on appeal.

The difference between a use variance and a developmental standards variance is of some import, because a different statute governs the BZA's actions depending on which type of variance is at issue. Indiana Code section 36–7–4–918.5 governs a variance from developmental standards:

(a) A board of zoning appeals shall approve or deny variances from the development standards (such as height, bulk, or area) of the zoning ordinance. A variance may be approved under this section only upon a determination in writing that:

(1) the approval will not be injurious to the public health, safety, morals, and general welfare of the community;

(2) the use and value of the area adjacent to the property included in the variance will not be affected in a substantially adverse manner; and

(3) the strict application of the terms of the zoning ordinance will result in

practical difficulties in the use of the property. However, the zoning ordinance may establish a stricter standard than the "practical difficulties" standard prescribed by this subdivision.

Ind.Code § 36–7–4–918.5(a). Indiana Code section 36–7–4–918.6, on the other hand, is applicable to petitions for special exceptions, special uses, and use variances in Lake and St. Joseph Counties. *See City of Hobart Common Council,* 785 N.E.2d at 246 n. 5. Section 918.6 provides that the board of zoning appeals shall submit these petitions to the legislative body for approval or disapproval with a favorable recommendation, an unfavorable recommendation, or no recommendation. Ind.Code § 36–7–4–918.6(c). The legislative body must then give notice of its intention to consider the petition at its next regular meeting, and shall vote on the petition within a certain number of days.[8] Ind. Code § 36–7–4–918.6(d), (e). If the legislative body does not vote to deny the petition within that time, the petition is approved. Ind.Code § 36–7–4–918.6(e).

 A "use variance" is "a variance permitting a use other than that permitted in [a] particular district by zoning ordinance." *Georgetown Bd. of Zoning Appeals v. Keele,* 743 N.E.2d 301, 302 n. 2 (Ind.Ct.App.2001) (quoting Black's Law Dictionary 1553 (6th ed.1990)). We have addressed use variances in cases dealing with a request to allow multifamily housing on land zoned for agricultural use, *id.* at 302, to allow a barbershop to be operated in an area zoned residential, *Wright v. Northrop,* 621 N.E.2d 1142, 1143 (Ind.Ct. App.1993), and to allow a "private recreational development and bait sales" in an area zoned rural residential, *Porter County Bd. of Zoning Appeals v. Bolde,* 530

N.E.2d 1212, 1213 (Ind.Ct.App.1988). As used in section 36–7–4–918.5, a "developmental standard" concerns things such as height, bulk, or area. We have addressed developmental standard variances in cases concerning a variance request from developmental standards requiring lot area of at least 15,000 feet and width of at least 100 feet, *Town of Beverly Shores v. Bagnall,* 590 N.E.2d 1059, 1060 (Ind.1992), a variance request regarding building height restrictions, *Metropolitan Bd. of Zoning Appeals of Marion County, Ind. v. Lane,* 786 N.E.2d 1162, 1165–66 (Ind.Ct.App.2003), *trans. denied,* and a variance request regarding side yard setback requirements, *Gary Bd. of Zoning Appeals v. Eldridge,* 774 N.E.2d 579, 581 (Ind.Ct.App.2002), *trans. denied.*

It is clear that we are here dealing with a developmental standards variance request. The developmental standards at issue here are lot frontage and lot area size. Misty Woods has not provided any evidence or argued otherwise. Accordingly, section 36–7–4–918.5 applies, and gives the BZA the authority to approve or deny Misty Woods' variance request. There is no genuine issue of material fact regarding the propriety of the BZA's action with respect to Misty Woods' variance request. The trial court should have granted the City's motion for summary judgment with respect to Counts II and IV of Misty Woods' complaint.

*Conclusion*

The trial court's order granting Misty Woods' motion for partial summary judgment and denying the City's motion for summary judgment on Count I is reversed. The City is also entitled to summary judgment as a matter of law with respect to the remainder of the counts of Misty Woods'

---

**8.** In a county having a population of more than 400,000 but less than 700,000, the legislative body has ninety days in which to vote on the petition. In a county having a population of more than 200,000 but less than 300,-000, the legislative body has sixty days in which to vote. Ind.Code § 36–7–4–918.6(a), (e).

complaint and the trial court erred in denying the City's motion for summary judgment on these counts. The trial court's order denying the City's motion for summary judgment on Counts II, III, and IV is therefore reversed.

Reversed.

SULLIVAN, J., and BARNES, J., concur.